Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Appellant,

v.

Clarence A. O'BRIENT, Appellee.

No. 20594.

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1963.

Robert E. Haberg, U. S. Atty., E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Sherman L. Kohn, Barbara W. Deutsch, Attys., Dept. of Justice, Wash., D. C., John W. Douglas, Asst. Atty. Gen., for appellant.

Laurel G. Weir, Philadelphia, Miss., for appellee.

Before CAMERON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

The claimant, Clarence A. O'Brient, brought this action against the Secretary of Health, Education and Welfare, under Section 205(g) of the Social Security Act, 53 Stat. 1368, 42 U.S.C.A. § 405(g), to obtain judicial review of a final decision of the Secretary denying his application to establish a period of disability and for disability insurance benefits under Sections 216(i), 64 Stat. 492 and 223, 70 Stat. 815 of the Act. 42 U.S.C.A. §§ 416(i), 423. O'Brient's impairment is a paralyzed right diaphragm of unknown origin. The district court set aside the Secretary's decision on the ground that there was no substantial evidence to support the hearing examiner's findings. We reverse.

The Social Security Act, 42 U.S.C.A. § 405(g) provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." This finality attaches to inferences supported by substantial evidence. Brunenkant v. Celebrezze, 7 Cir. 1962, 310 F.2d 355. The presence of a disease or a medically determinable impairment does not satisfy the requirements of the Act unless the disease or the impairment causes "inability to engage in any substantial gainful activity". 42 U.S.C.A. §§ 416(i), 423(c). Judge Rives of this Court, sitting by designation, concluded that "any substantial gainful work" must have reference to a claimant's education, training, experience, and physical and mental capacities, in addition to the effect of the impairment on former work activities. Aaron v. Fleming, M.D.Ala.1958, 168 F. Supp. 291, 295. This test has become standard. "Thus, even though severe physical limitations be established, it is still necessary in applying the legal standard to relate this limitation to the claimant's work history and educational background." Underwood v. Ribicoff, 4 Cir. 1962, 298 F.2d 850, 852. In that case the court found for the claimant. Underwood was sixty-five and by training and experience was equipped only for work demanding a considerable amount of physical exertion; he was "dependent for his living upon the ability of his body to function at near capacity". Using the same test in Hicks v. Fleming, 5 Cir. 1962, 302 F.2d 470, we found for the Secretary. But Hicks had vocational retraining, found a new job, worked in an automobile electrical shop, had been a dealer in a professional poker game, and for two years had earned about $1300 a year.

In his application, O'Brient stated that he was unable to work on January 15, 1960. The claimant was in the University Hospital in January 1960 for removal of a knot behind his right knee when he complained of chest pains. Dr. Rhymes diagnosed the chest condition as eventration of the right diaphragm.[1] X-rays showed a paralyzed right hemidiaphragm and no abnormalities in the sub-diaphragmatic area. The stay in the hospital was uncomplicated. He was discharged after ten days, because "the patient had reached maximum hospital

---

1. The Diaphragm is defined in Blakiston's New Gould Medical Dictionary (2d ed. 1956) as a "musculo-tendinous partition, especially that partition muscular at the circumference and tendinous at the center, which separates the thorax and abdomen and is the chief muscle of respiration and expulsion. * * * Eventration of the diaphragm is defined as "a condition where there is defective muscular action of the diaphragm * * *,"

benefit." Later medical reports filed in late 1961 showed mild emphysema but improvement in the claimant's diaphragmatic condition and in his breathing. Dr. Johnston of Jackson, Mississippi, reported negative results from a clinical examination of heart and lungs, that "most of the patient's complaints (numbness in the right arm and burning sensations in his legs, in addition to the paralyzed diaphragm) are without organic foundation", and that there was no evidence of disability. Dr. Rhymes's second report described the diaphragmatic condition as "gradually progressive", noted shortness of breath, and recommended sedentary activity.

O'Brient was forty-six years old in 1960. He has a high school education. He has been trained, and has worked, chiefly in form carpentry; has served as a foreman and kept time and distribution records; done cabinet work on the side; knows how to build a house and "contracted one or two" in the past; knows how to read construction plans; has been able to fix his own television set. The examiner described O'Brient as "well-developed and well-nourished, suntanned and in good spirits". The examiner found no. perceptible shortness of breath, no limp, and no discernible abnormalities or physical defects. O'Brient testified that the pain in his chest and difficulty in breathing, after exertion, and a pain in his legs when climbing or lifting prevented his returning to construction work. His breathing had improved somewhat because of breathing exercises. At the time of the hearing, he walked about a mile a day, drove a car, gardened, and had done some light carpentry. The examiner found him "mentally alert", with an "exceptionally good" language facility, "knowledgeable", "cooperative", "in good spirits", "willing to work". In the hearing the claimant stated: "I want to do something. I'm not going to lay around * * * I would like to take a course in something that would benefit me. They tell me now if I don't change my trade I'm not going to get any better."

O'Brient himself said that he had "gotten quite a bit better." He felt, however, that he was entitled to some assistance for the period during which he had been "completely knocked out" and had "gone in debt". Six months after he filed this action, the Division of Vocational Rehabilitation of the State of Mississippi determined that O'Brient was not disabled by his impairment; that he could continue to work as a supervisor.

Mr. O'Brient's purpose in filing a claim for disability centered in a desire to obtain financial relief, pending reemployment. He stated, for example:

"I'm going to make some money. I'm going to do it somehow. But I'm going to have to need some help to do it. I think I'm entitled to assistance, I believe, through social security, through rehabilitation, or whatever you have. * * * I think for the time I've been disabled, for that period, I'm entitled to that much time if I was fully physically able to work right now, but I don't want to take nothing and sit down."

On these and other facts, and on the basis of the medical and vocational reports, the hearing examiner found that O'Brient's health was improving and that the impairment was not sufficient to prevent him from performing sedentary shop work or supervisory work. He found that thanks to O'Brient's high school education, manual skills, and previous experience, O'Brient was capable of being retrained with little difficulty and, without any special or prolonged course of training, was capable of earning a substantial living in radio and television repairs, in supervising construction work, and in sedentary or semi-sedentary jobs.

The district court's decision appears to have been based, at least in part, on the claimant's assertion that in the general area where he lived no light work was available as a parking lot attendant, night watchman, or janitor. The district court stated that "conjectural possibilities" are not evidence that O'Brient

"was capable of gainful employment available to him".

Congress might well have defined disability in broad terms under the Social Security Act and related it to unemployment by qualifying "any substantial gainful activity" with the words "available in the claimant's immediate working area" or similar words. That is not the statutory test; the Act is not an unemployment compensation law. Here, as in Hicks:

> "The hardship here seems to lie more in Hicks's inability to find employment than in his incapacity to work. Despite our natural sympathy for Hicks's plight, we cannot order unemployment compensation under the guise of disability insurance."

The explicit congressional command is that the impairment must cause "inability to engage in any substantial gainful activity". See Gotshaw v. Ribicoff, 4 Cir. 1962, 307 F.2d 840, 844; Pearman v. Ribicoff, 4 Cir. 1962, 307 F.2d 573, 574; and Adams v. Flemming, 2 Cir. 1960, 276 F.2d 901.

In this case, as in all of these disability cases under the Act, the plaintiff asks the inevitable rhetorical question: What jobs are there? For the Secretary, "What jobs are there" means, within the context of the Act, what kinds of work can the claimant perform, not what jobs are there available for him in Kosciusko, Mississippi. See Kerner v. Fleming, 2 Cir. 1962, 283 F.2d 916; Graham v. Ribicoff, 9 Cir. 1962, 295 F.2d 391; Rinaldi v. Ribicoff, 2 Cir. 1963, 305 F.2d 548. In the light of this correct understanding of the law, the Secretary's showing of O'Brient's ability to perform light work of a various nature is all the answer he is required to make to the claimant.

When a claimant's former employment is the only type of work he is capable of performing, then "former work" means "any work" and the requirements of the Act are met. This was the situation in Ferran v. Flemming,

5 Cir. 1961, 293 F.2d 568; Butler v. Flemming, 5 Cir. 1961, 288 F.2d 591; Flemming v. Booker, 5 Cir. 1960, 283 F.2d 321; Ribicoff v. Hughes, 8 Cir. 1961, 295 F.2d 833; Kohrs v. Flemming, 8 Cir. 1959, 272 F.2d 731; Kerner v. Flemming, 2 Cir. 1960, 283 F.2d 916. But impairment to carry on one's *former work* is not enough in itself to satisfy the statutory definition of "any substantial gainful activity." Thus in Hicks this Court pointed out that the word "any" includes former work and work of a different nature:

> "To establish a disability under 42 U.S.C.A. § 416(i) a claimant must do more than show that he is unable to do his former work; he must be unable to perform any substantial, gainful work, including work of a physically or emotionally lighter type."

See also Gotshaw v. Ribicoff, 4 Cir. 1962, 307 F.2d 840.

Taking the record as a whole, we find that there is substantial evidence to support the Secretary's determination.

The judgment is reversed.