Sam BARNES, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 11805, Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 5, 1963.

Howard W. Lenfant, New Orleans, La., for plaintiff.

Gene S. Palmisano, Asst. U. S. Atty., New Orleans, La., for defendant.

AINSWORTH, District Judge.

This action was brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, dated August 30, 1961, denying plaintiff's claim for a period of disability and for monthly disability insurance benefits.

Both plaintiff and defendant filed motions for summary judgment, and the court remanded the matter for the taking of additional medical evidence. Upon the receipt of the additional evidence the Appeals Council rendered a decision on April 9, 1963 affirming the decision of the Hearing Examiner. The decision of the Appeals Council became the final decision of the Secretary of Health, Education and Welfare.

Plaintiff has met the special earning requirements of the Social Security Act and has exhausted his administrative remedies. The only issue remaining which the court must decide is whether there is substantial evidence in the record to support the decision of the Hearing Examiner that plaintiff failed to establish disability benefits as of November 16, 1960 when he filed his application.

Plaintiff is a 52-year-old colored male, with a third-grade education. He is unable to read but can sign his name. He is married and has five children. He complains of a gastronomic condition, dizziness, weakness, an atrophic left leg and misformed and sensitive left foot. At the hearing he claimed that on two occasions his dizziness caused him to become unconscious and fall. He also stated that he was able to go outside without any assistance; that he walked from two to five blocks a day for exercise, and could take care of his own needs; that he assisted with washing and drying dishes; that he helped get the children off to school, and took care of the younger children when his wife, who is employed, was out of the house.

He worked as a laborer in a paper mill for fourteen years, which job terminated in 1958 because of reduction in force and mechanization of the mill. Until August 1960 he worked driving a cab, first in the employ of another and then for himself. He testified that he stopped driving when he became sick and subsequently sold his cab because he was unable to keep up with the notes. In October 1960 he underwent surgery at Washington-St. Tammany Charity Hospital when a 75% subtotal gastrectomy was performed.

The medical evidence upon which the Hearing Examiner initially denied plaintiff's claim for disability and disability insurance benefits consisted of the following:

1. Medical report, medical social worker, Washington-St. Tammany Charity Hospital, Bogalusa, Louisiana, dated November 22, 1960. This report disclosed that plaintiff was first seen on August 26, 1960. He

gave a history of weight loss and stomach trouble for twenty years. Objective findings disclosed a duodenal deformity with an ulcer crater. A 75% subtotal gastrectomy performed on October 6, 1960, with postoperative gastritis noted. After therapy and medication his condition was noted to be "good so far" and that he "may be improved", with optimum improvement expected in six months, although it was noted that plaintiff was unable to work at the date of the report approximately five weeks after surgery.

(This hospital later reported that he was able to return to work, as a result of which the Department of Welfare terminated its assistance to plaintiff.)

2. A report from Dr. C. W. Crain, general practitioner. He has seen plaintiff yearly since February 18, 1958. He diagnosed borderline malnutrition, following plaintiff's operation, old polio, left side, and symptomatic pisiform of the left foot. His condition was stated to be static as of December 6, 1960 and he was found to be unemployable.

3. A report from Dr. Sanford W. Tuthill, internist, dated February 8, 1961, which concluded that "There is certainly no medical disability at this time and it is reasonable to believe this man could continue driving a cab."

Additional medical evidence considered by the Appeals Council subsequent to remand by this court consisted of the following:

1. Report from the Washington-St. Tammany Charity Hospital, February 22, 1961: Sam Barnes has been treated here regularly since September 14, 1960, when he gave a history of stomach trouble for twenty years, being progressively more painful, constant epigastric pain, weight loss. G. I. Series on September 14, 1960 showed deformed duodenal bulb with ulcer crater. On last clinic visit patient was found to be asymptomatic except for epigastric fullness. On August 7, 1961 the doctor noted that patient was not disabled, but should be allowed to rest for brief periods after eating.

2. A report from Dr. Max E. Johnson, neurologist, dated September 7, 1962: "The present findings regarding the left extremities are consistent with a poliomelitis or possibly an encephalitis in early life. This condition appears to be stabilized and produces some degree of difficulty in getting about which would interfere with strenuous physical activity. The spells of 'blackout' which he reports are difficult to evaluate. Whether these are syncopal episodes or seizures cannot be determined at this time. An electroencephalogram would likely help in this determination."

3. Plaintiff was referred to the Browne-McHardy Clinic where comprehensive tests were made on September 24, 25, 26, 1962. Dr. John T. Leckert, who evaluated these tests and examined the patient personally, commented: "On the basis then of these findings it is my impression that Mr. Sam Barnes has symptoms which would be compatible with a dumping syndrome. It should be mentioned that these might improve on a high protein, low carbohydrate, bland diet, as well as medications consisting of anticholinergic drug and Oxaine-M. There was two plus urinary sugar present. This should be rechecked with a blood sugar and possibly a glucose tolerance tests. The lungs were hyperresonant and there was some suggestion of restrictive and obstructive ventilatory insufficiency. This would suggest emphysema and chronic bronchitis. It should be mentioned also that the pulmonary function studies showed inefficient oxygen absorption which, of course, could be the result of the pulmonary fibrosis reported on a previous chest x-ray. Our present

film does not show this finding. There is some peripheral arterial insufficiency due probably to arteriosclerosis obliterans. There is no evidence of renal disease in these studies. There is no evidence of heart disease except for the possible one plus enlargement of the left ventricle on fluoroscopy. The patient is thin, weighing only 120 pounds."

4. Opinion of Dr. Richard M. Levy, orthopedist, dated September 26, 1962, stating: "I feel that the patient does have considerable disability of the left lower extremity due to the extensive paralysis which he has. However, I feel that the patient is able to work as a cab driver. The patient is certainly not capable of working at any occupation which requires prolonged walking or standing or in any very strenuous occupation."

5. Letter from Dr. C. W. Crain, dated October 3, 1962, stating that he had seen plaintiff on February 19, 1958, November 4, 1958 and December 16, 1960. Since that time he had not asked for treatment. He didn't recall having prescribed any medication.

■ The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, according to provisions of 42 U.S.C. § 405. The finality accorded by the statute to the administrative findings extends as well to the inferences from the evidence made by the Secretary if a substantial basis for them appears in the record. Carqueville v. Flemming, 7 Cir., 1959, 263 F.2d 875. The function of this court on review is, therefore, very limited. However, this restriction is not to be interpreted as a surrender of the "conventional judicial function" of a court. Universal Camera Corp. v. National Labor Rel. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and "substantial evidence" is more than a mere scintilla. Consolidated Edison Co. of New York v. National Labor Relations Bd., 305 U.

S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). We do not find that substantiality of evidence required by the Act. Inasmuch as it is necessary to show that plaintiff was under the requisite disability prior to the jurisdictional cut-off date of February 16, 1961 in order for him to prevail, the medical evidence taken after remand by this court on June 20, 1962 cannot be considered independently. However, as the Appeals Council points out the results of subsequent examinations are of value in determining not only whether during the crucial period plaintiff was disabled, but whether at a later date the claimant did or did not have an impairment of sufficient severity as to constitute disability which might reasonably relate back to the period in issue. We find, particularly from the letter from the Washington-St. Tammany Charity Hospital, dated December 22, 1961, that plaintiff was disabled during the pertinent period. The letter states that "Sam Barnes has been treated here regularly since 9/14/60, when he gave history of 'stomach trouble' for 20 years, being progressively more painful, constant epigastric pain, weight loss." The continuing nature of his impairment is shown in the record. At the hearing plaintiff, when asked his reason for reporting back to the hospital since he was hospitalized, said:

"Stomach. Whenever I eats—well —I have that dizzy feeling.

"Q. What?

"A. Whenever I eat I have dizziness about the head. I falls out. I have dizziness about the head every time I eats."

■ The court is cognizant that plaintiff has the burden of sustaining his claim for disability and we feel that he has met this burden of proof. The term "disability" under the Act is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C. §§ 416(i) and 423. The phrase "substantial gain-

ful activity" is explained in a statement made by the Department of Health, Education and Welfare before the Committee on Finance of the United States Senate: "Substantial gainful activity means the performance of substantial services with reasonable regularity in, some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity."

■■ In considering whether or not a claimant may be disabled, the background, experience, training, education, physical and mental capabilities of the plaintiff are pertinent. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591; Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321. It should be noted that plaintiff has only a third-grade education and is unable to read. His former experience consisted of manual labor and driving a cab. Both Dr. Levy and Dr. Johnson, the only two doctors (among the several who examined plaintiff subsequent to the remand by this court) who commented on the physical ability of plaintiff to resume work, and who were of the opinion that he could do so, carefully limited their respective opinions in this regard. Dr. Levy stated that the "patient is certainly not capable of working at any occupation which requires prolonged walking or standing or in any very strenuous occupation"; Dr. Johnson stated that his "condition appears to be stabilized and produces some degree of difficulty in getting about [sic] would interfere with strenuous physical activity." It would be impractical and unrealistic to believe that this man, considering his limited education, would be fit for a job requiring a higher mentality and greater ability than those normally essential for the performance of manual labor. And for strenuous labor he has been declared unfit by doctors procured by defendant. It is pertinent to note in this connection that vocational rehabilitation was denied

on the basis of a finding of "impairment too severe" and "no employment opportunities." Although his rejection for rehabilitation is not determinative of the question of whether an individual is disabled under the Social Security Act (Regulation 20 CFR 404.1525), it certainly detracts from the weight of the evidence upon which the findings of the Hearing Examiner are based.

The decision of the Appeals Council states: "Considering claimant's gastrointestinal condition, the Appeals Council must perforce find from the evidence of record that his inability to perform his most recent usual work that of driving a taxicab, was temporary, and that in driving a taxicab he could arrange his time so that he could rest for a while after meals, eat small meals often, and so alleviate his gastrointestinal discomfort." But the impracticality of this suggestion is at once apparent. Plaintiff was forced to sell his taxicab in 1960 several months prior to surgery when his stomach distress rendered him physically incapable of doing this work, resulting of course in financial difficulty and failure to keep up with his notes. He has no funds with which to purchase a new cab. The employer for whom he formerly worked as a taxicab driver has gone out of business. It is significant to note that even if such employment were available to him it would be hazardous to the public as well as to plaintiff because of his "spells of blackout" which Dr. Johnson found difficult to evaluate. Furthermore, even if plaintiff were physically able and the opportunity were present for him to return to his former employment of driving a taxicab, it is doubtful that this would constitute "any substantial gainful activity" as defined by the Act. The Fifth Circuit in Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470 (cited by Judge Wisdom of the Fifth Circuit in the recent case of Celebrezze v. O'Brient, 323 F.2d 989, October 1963), and Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321, authorize a rule-of-thumb measurement of $1,200 yearly earnings to determine substantial employment in disability cases.

Plaintiff has stated that he earned less than $400 annually driving a taxicab.

 Considering the background, education, age, experience, and former employment of plaintiff along with the medical evidence of record, we are forced to conclude that he was disabled within the meaning of the Act at the time that he met the special earnings requirement and that this disability continues to the present time.

Therefore, plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied.