**Charles A. FRITH, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 20571.**

United States Court of Appeals Fifth Circuit.

June 26, 1964.

558

William I. Aynes, Atlanta, Ga., for appellant.

Slaton Clemmons, Asst. U. S. Atty., Charles L. Goodson, U. S. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question presented by this appeal is whether the determination of the Secretary that Claimant-Appellant is not entitled to the establishment of a period of disability [1] and to disability insurance

---

[1]. Social Security Act § 216(i), as amended 42 U.S.C.A. § 416(i).

benefits [2] is supported by substantial evidence. The District Judge considered the determination was supported by the administrative record and granted summary judgment for the Secretary. We disagree and consequently reverse and remand for further administrative proceedings.

Claimant was born on February 18, 1911. After completing the 11th grade in school, he worked on a farm. In 1934 he worked for a highway construction company doing paving. Subsequently he began driving a truck, a job which he continued to perform until 1941. Later he hauled gasoline in Georgia. During World War II he worked for two years on an assembly line at an aircraft plant and following the war he drove a cab in Grove Park, Georgia. Later he again hauled gasoline. For 13 years prior to his accident in 1960, Claimant had been employed by Miller Motor Express. He worked for this employer first, as a city truck driver, then loading and unloading freight in the warehouse, and for the last year and one-half as a freight checker. The Claimant testified that the longest period of continuous unemployment suffered by him prior to the accident was one week. This was undisputed.

On May 6, 1960, Claimant was severely injured on the job by being thrown off balance and against the wall of the trailer in which he was working when it was hit by a truck. The immediate result of the accident was severe pain in the lower back and through the hips. The night of the accident Claimant's family doctor called in a nerve specialist. The doctors recommended hospitalization, and Claimant was hospitalized for about three weeks—most of the time in traction. Thereafter, Claimant received physical therapy. In August 1960, he was again hospitalized, and on September 21, 1960, underwent dual back surgery—a laminectomy for the excision of a lumbar disc and a spinal fusion.

The medical evidence consists principally of reports from various doctors whom Claimant has consulted from time to time.

Dr. Pattillo, the family doctor, reported that Claimant complains of pain in the back, legs, and hips. His response to the September 1961 surgery was only fair, and in his opinion Claimant suffered total restriction of activity. The amplification of that conclusion was that Claimant was "unable to stand for over a few minutes," "suffers severe pain," cannot bend, and "long sitting [is] painful." The doctor further stated that "lower tendon reflexes were absent," that there was "some atrophy of both legs," and that in his opinion "this man is totally and permanently disabled."

Dr. Gish, the neurosurgeon who performed the laminectomy and fusion, reported that the response to surgery was "fair to good," and that his condition was "static."

Dr. Lovell of the Atlanta Orthopedic Clinic, where Claimant had been treated from time to time since the accident indicated in conclusory fashion that Claimant had "done fairly well for the most part," that Claimant reported "occasional pain in his back," and that he "is still under treatment."

Dr. Allman, also of the Atlanta Orthopedic Clinic, reported that Claimant complained of "occasional pain in the back," that "he had done very well for the most part," and that he has a disability rating of 35% which is "permanent."

Dr. Collinsworth, who examined Claimant originally in connection with his compensation claim,[3] reported that his examination revealed "moderate limitation of forward bending and capacity to squat," and concluded with these remarks:

"It is my opinion that people who have had surgery for disc conditions are not physically capable of doing

2. Social Security Act, § 223, as amended 42 U.S.C.A. § 423.

3. Claimant was paid $3,250 in workmen's compensation as a result of his May 1960 injury.

the type of work Mr. Frith's job requires without assuming an undue risk of having further difficulty with low back discomfort. He could only be recommended for such work that would not require lifting of more than twenty-five pounds, no climbing and no pulling. Therefore, I do not consider him physically fit to return to this type of work." [4]

Based on the recommendation of Dr. Collinsworth, Claimant was not reemployed at Miller Motor Express.

It is uncontradicted on this record that Claimant was apparently in severe pain for several months prior to the September 1961 operation. Although the operation seemed to give him some temporary relief during the six or seven weeks he was in bed following the operation, he testified that it was no longer "minor" when he got up, and that "it continued to grow worse since that time." He further testified that he had taken demerol for the pain, but that even when he takes so much that he becomes "dopey" it does not give him relief. According to his further testimony, he can lift his arms straight out, but that "lifting overhead it is an awful lot of strain on my back and increased the pain." He stated that he wore moccasins so that he would not have to bend to tie shoe laces, that he could probably hold 25 pounds, but he couldn't lift that much. He also stated that he can drive a car better than he can ride with someone else since the wheel holds his weight up.

After being turned down by his old employer, Claimant tried to sell Watkins Products house to house on a rural route, but had to give it up because of the effect on his legs of the car travel. Claimant stated that after riding awhile he can hardly walk because of a "numbness, like the circulation was gone." He testified that the riding on this particular job also increased his back pain.

Claimant testified that he has difficulty in sleeping because of the pain. He stated that he cannot remain in bed very long because of the pain, and therefore only gets about four hours sleep per night. He further testified that the longest that he could walk was about ten minutes, that he cannot stand for very long, that he has difficulty going up steps, that his general strength had declined, and that he had lost weight from 165 down to 117 pounds.

We have not undertaken discussion of the evidence with any view in mind of remaking factual choices. For as we said in Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757, 759, "our function is a limited one." The statute says that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *," 42 U.S.C.A. § 405(g), and we are bound by that standard. However, we have indicated before that in view of the deliberate congressional judgment to afford this significant insulation to the administrative fact findings, a judgment that we in no way undermine or question, it becomes extremely important that the administrative trier of fact (1) apply the correct legal standards for evaluation and (2) make findings which resolve the crucial issues. Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648; Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757.

Here is a man that prior to the 1960 accident had worked continuously for 26 years as a farm hand, truck driver, factory worker, and warehouse checker. After that accident and extensive back surgery, all the medical experts agree that he is disabled to a considerable extent. By the lay and medical testimony, it is likewise established that the disability imposes significant limitation on his ability to walk, stand, lift, bend, climb and pull. He was refused reemployment at his old job because of those limitations,

---

4. This letter-report to the former employer, Miller Motor Express, was based on a report from Dr. King of the Long Hospital, Atlanta. He said in that report:

"Because of the previous surgery in the lower lumbar area, the patient is not considered to be a good employment risk where heavy lifting is concerned."

and his attempts to work at other, less strenuous jobs—Watkins Products salesman, and work at a fish bait stand—have been unsuccessful for the same reason. Crucial to the determination of the question whether he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," 42 U.S.C.A. § 423(c) (2), is resolution of the double-edged inquiry (1) what can Claimant do, and (2) what employment opportunities are available to a man who can only do what Claimant can do? Hayes v. Celebrezze, 5 Cir., 1963, 311 F. 2d 648, 654; Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470; Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916.

■ Aside from a short, conclusory statement near the end of the Hearing Examiner's Decision, it is nowhere apparent from the record that the Hearing Examiner addressed himself to and resolved the crucial factors. Is Claimant, for example, really suffering the pain complained of? Does it really keep him from working? In view of his pain, the admitted medical limitations and his efforts to obtain and hold jobs, what kind of work is really reasonably open to him? It is clear that when he does do so, his findings are given finality and are not to be reversed or modified by the Courts. Celebrezze v. Kelly, 5 Cir., 1964, 331 F.2d 981. But we likewise recognized in Kelly that the Examiner must address himself to the problem and make "findings and conclusions, in which he takes all of these factors into consideration."

■■ We realize that the Act is not an unemployment compensation statute and that Claimant's failure to obtain a job must result from his physical condition, not from widespread unemployment. Celebrezze v. O'Brient, 5 Cir., 1963, 323 F.2d 989; Robinson v. Celebrezze, 5 Cir., 1964, 326 F.2d 840. But when the Examiner fails to make satisfactory findings on crucial factors, we are compelled to reverse and remand for further proceedings. ■

■ We do not undertake to blueprint these proceedings on remand. But we think it appropriate to state that all of the present record may be used, and the parties are free to, and undoubtedly will, supplement it by additional evidence, oral or written, or both. Likewise, rather than attempting to cast it in terms of whether the prior decision should or should not be sustained, an entirely new decision should be reached on that total record. We intimate nothing as to the result to be reached. Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648, 654–655.

Reversed and remanded.