Chester W. MORSE, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 14374.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 6, 1964.

Midlo & Lehmann, Rene Lehmann, New Orleans, La., for plaintiff.

Louis C. LaCour, U. S. Atty., and Gene S. Palmisano, Asst. U. S. Atty., for defendant.

AINSWORTH, District Judge.

Plaintiff seeks review of a final determination by the Secretary of Health, Education and Welfare holding that plaintiff is not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223 [1] of the Social Security Act, as amended.[2] Jurisdiction to review the matter is conferred under Section 205(g) of the Act.[3]

Defendant has moved for summary judgment, contending generally that the findings are supported by substantial evidence on the record considered as a whole. Plaintiff has filed a cross motion for summary judgment contending that the Secretary's denial of disability benefits is based on a finding that the physical condition can be corrected by a spinal laminectomy but as a matter of law such a surgical operation cannot be forced upon a claimant as a condition of obtaining benefits.

Plaintiff is a 43-year-old male possessing a third-grade education. He is unable to read or write more than his own name. At various times during his life he performed farm labor, shipyard work, spot welding and assisted an automotive mechanic. Since 1941 he has complained of a back condition and has been examined by more than ten reputable medical practitioners. At the agency hearing, however, only written reports of the physicians were available and plaintiff was not represented by counsel.

Dr. H. R. Soboloff, a specialist in orthopedic surgery, reported on plaintiff's present condition that "findings in the low back, substantiated by X-rays, revealed lumbosacral joint disease of severe degree, with marked deterioriation of the lumbar disc and evidence of nerve root irritation." That report of February 16, 1962 further indicated that Dr. Soboloff had seen the patient as early as October, 1955, and concluded that the patient "is unable to do any sort of moderate to heavy physical labor." These medical findings are further confirmed by a May 25, 1962 X-ray examination report from Dr. Teitelbaum and Dr. Schneider, roentgenologists.

Dr. Richard M. Levy, another specialist, noted that there was a markedly narrowed intervertebral disc space between the fifth lumbar and first sacral segments in addition to a considerable amount of sclerossi of the under surface of the fifth lumbar vertebra and the superior surface of the sacrum. A marked "osteo arthritis of the lumbar region" was diagnosed by Dr. Jacob H. Kety, a Covington, Louisiana general practitioner who treated plaintiff regularly since 1951 and certified him "permanently and totally disabled" on December 10, 1962. Dr. Kety added that this "disease is progressive and no treatment other than palliative is possible." From a chiropractic standpoint R. L. Byron, D. C., observed a "severe muscle contraction of post lumbosacral fascia" producing radiating pains into the legs through the sciatic nerve and occasionally into the pelvic section. A later examination revealed no improvement.

1.  42 U.S.C.A. §§ 416(i) and 423.

2.  42 U.S.C.A. §§ 301 et seq. Hereinafter referred to as the Act.

3.  42 U.S.C.A. § 405(g).

However, in May, 1962, Dr. William F. Kleisch, an internist, noted that a significant medical disease was not found, and from a single examination in August, 1962, Dr. Alvin Cohen, a psychiatrist, concluded that plaintiff "does not appear to be in as much pain as he indicates and he doesn't have visible signs of the helplessness he describes." These two reports were apparently accorded little significance though, since the Secretary's finding that plaintiff's disability could be corrected through operative procedures necessarily implied that plaintiff was suffering from a disability at that time.

However, in ultimately denying disability benefits defendant found that plaintiff's back condition "is remediable by safe available operative procedures," which, if performed, "would enable him to return to his former employment." The question thus presented is whether claimant is disabled within the meaning of the Act. More precisely, the issue is whether a claimant suffering from a degenerative lumbosacral joint disease can be denied disability benefits even though he might be rehabilitated following a successful exploration and fusion of the lumbosacral joint area.

In defining "disability" Section 223(c) (2) of the Act provides:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. * * *." 42 U.S.C.A. § 423 (c) (2).

In regulations adopted pursuant to this statute, "disability" has been further defined to include only those impairments which are not reasonably remediable.

"An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity." 20 C.F.R. § 404.1502(g).

Plaintiff attacks the Secretary's finding under this regulation with two arguments: first, that even if the operation were successful the credible medical evidence shows that plaintiff would still be unable to perform the only type work he is suited by education and training to do, namely, moderate to heavy physical labor; and, secondly, that the surgery required in this case was not found to be reasonably safe.

The only medical reports of record referring to the question of whether surgery would result in rehabilitation were submitted by Dr. Soboloff and Dr. Levy. It was Dr. Soboloff's opinion that with a combined "exploration of the lumbosacral joint and fusion of the area" plaintiff "could be rehabilitated." Dr. Levy recommended surgery also and noted cautiously that "following a successful spinal fusion, the patient should be able to return to work and perform any but the most strenuous of occupations." Based on such evidence this court cannot say that plaintiff would remain disabled should the operation prove successful.

On the other hand, testimony elicited from plaintiff at the hearing indicated that he was extremely fearful of having back surgery performed. At one point he responded regarding a recommendation that surgery be performed:

"I asked the doctor would that be a cure and he said he couldn't promise. Any doctor can't promise me something on an operation I don't want him to experiment with my back."

Shortly thereafter he commented further on his refusal to permit surgery:

"If they wouldn't have talked two ways I would have. He (Dr. Soboloff) told me he didn't think it would do me no good, well, I ain't going to be cut on by thinks. He should have knowed."

This graphically indicates that plaintiff harbored at least a reasonable fear for his personal safety in contemplation of the suggested back surgery.

We have been cited no rule, regulation or authority by defendant holding that

surgery of all types must be performed in an attempt to remedy a claimant's condition prior to payment of benefits.

██ Under facts somewhat similar to those in the case at bar, a district court agreed with a finding of the Secretary "that plaintiff had refused recommended treatment or surgery (for a ruptured disc) which in the opinion of examining physicians could have diminished the impairment with reasonable effort and safety to himself." Copelin v. Ribicoff, 194 F.Supp. 953, 954 (D.C.1961). There, because of those physicians' opinions and the Secretary's express finding, a denial of disability benefits was affirmed as not being of indefinite duration. However, in the instant case there was never any express administrative determination, supported by competent medical evidence, that the surgery could have been performed with reasonable safety to claimant. Rather, the dogmatic ruling here was that the mere "refusal of claimant to accept the remedy offered by qualified physicians for a condition which he asserts is disabling must preclude him from benefits under the Act." Such an absolute rule is not the law. The regulation clearly permits reasonable refusals. See Ratliff v. Celebrezze, 338 F.2d 978 (6 Cir. 1964).

██ ██ The proper procedure in analogous situations then is for the Secretary to make an express determination of whether a refusal to accept treatment or surgery is reasonable or not. See, for example, Park v. Celebrezze, 214 F.Supp. 153 (D.C.1963); Copelin v. Ribicoff, supra; and Martin v. Ribicoff, 195 F. Supp. 761 (D.C.1961). Should it be considered that the ruling of the Secretary here carries with it an implied finding that the impairment can be diminished with reasonable safety to plaintiff, such a finding could not be permitted to stand since the administrative record is devoid of competent evidence indicating that the surgery is reasonably safe within the meaning of the regulation.

Remaining for determination is whether plaintiff's motion for summary judgment should be granted on the facts already in the record, or whether the case should be remanded to the Secretary for further consideration. The lack of evidence to support a finding that the refusal was not reasonable is almost matched by the paucity of facts upon which it could be said that the refusal was reasonable. Other than the claimant's apparent fear of surgery in general, and of an "experimental" back operation in particular, and the medical reports which merely suggest that surgery could result in rehabilitation without recommending it or indicating the degree of risk involved, there is no evidence of record which would permit this court to state conclusively that claimant's refusal was based on a reasonable fear for his own safety. Here the exact nature of the proposed surgery has not been precisely defined, nor is there any indication whether the degenerative condition in that area of the back will render the operation more or less dangerous. Furthermore, we must consider both the risk of fatality and the risk of increasing the disability which might result from the operation. In addition, there may also be other circumstances bearing upon this issue.

██ The Secretary has failed to make a satisfactory finding on a determinative issue, namely, whether under all the circumstances and in light of competent medical evidence the claimant's refusal to submit to the "suggested" surgery was reasonable. Consequently, the cross motions for summary judgment must be denied and this case remanded to the Secretary for further proceedings. 42 U.S.C.A. § 405(g); Frith v. Celebrezze, 333 F.2d 557 (5 Cir. 1964). On remand the question of the refusal being reasonable or not should include findings, based on medical testimony, as to the precise type of surgery required in this particular case, and the effect of claimant's fear, degenerative back condition and other circumstances on the possible success or failure of that operative procedure in terms of over-all risk.