Adolph **BELSOME, Jr.**

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, United
States of America.**

**Civ. A. No. 15150.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 5, 1965.

23 S.Ct. 787, 47 L.Ed. 1016 (1903). Legislation by Congress pursuant to the territorial clause, and by territorial legislatures deriving their authority from the Congressional power, has frequently been sustained in circumstances where constitutional limitations might otherwise have been insuperable. Balzac v. People of Porto Rico, supra; Public Utility Comm'rs v. Ynchausti & Co., supra; Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911); Dorr v. United States, supra; Territory of Hawaii v. Mankichi, supra; Dooley v. United States, supra; Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901); see Rabang v. Boyd, 353 U.S. 427, 432, 77 S.Ct. 985, 1 L.Ed.2d 956 (1957).

Thomas A. Early, Jr., Hooper, Schmidt & Early, New Orleans, La., for plaintiff.

L. Howard McCurdy, Jr., Gene S. Palmisano, Asst. U. S. Attys., E. D. Louisiana, New Orleans, La., for defendant.

WEST, District Judge:

This action is brought under Section 205(g) of the Social Security Act, as amended, Title 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for monthly disability insurance benefits under Section 223 (a) of the Act. Plaintiff filed application for disability benefits on July 23, 1962, and on October 26, 1962, was notified by the Chief of the Evaluation and Review Branch of the Social Security Administration that:

"We find that although you do meet the earnings requirement you do not meet the disability requirement."

His claim for disability benefits was thus denied. After requesting a reconsideration of this holding, plaintiff was notified on December 20, 1962, by the Chief of the Reconsideration Branch that:

"After thoroughly reviewing the record in your case, including the additional medical evidence, and considering your statements, age, education, training, and experience, we find that the previous determination is proper under the law."

Plaintiff then applied for a hearing before the Hearing Examiner, which was held on August 14, 1963. On September 12, 1963, the Hearing Examiner rendered a written opinion in which he denied plaintiff's request for disability benefits on the ground that he had not established that he had impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of July 23, 1962, was effective. It was found, however, that plaintiff would continue to meet the earning requirements for disability purposes until June 30, 1965.

Plaintiff then applied to the Appeals Council for review. On December 4, 1963, his request for review was denied. This suit followed on January 20, 1964. After this suit was filed, defendant filed a motion for summary judgment which was, by consent, submitted on the record as it now stands, including a complete copy of the transcript of all prior proceedings. Now, after carefully reviewing and considering the entire record herein, this Court concludes that there is ample evidence contained therein to sustain the opinion of the Hearing Examiner.

Plaintiff is a fifty-three year old male. His total formal education consisted of completing the first eight grades of elementary school and attending night school for one week. At various times prior to June, 1960, the date of his alleged disability, he worked on his father's boat as an operator and cook; as a longshoreman; as a common laborer for a construction company; as an ordinary seaman; and as a cafeteria runner. In June, of 1960, while working as a water boy for a stevedoring outfit, he developed active tuberculosis. Thereafter he was admitted to St. Claude General Hospital in New Orleans, Louisiana, where, after remaining two days, his condition was diagnosed as active, far-advanced pulmonary tuberculosis. From there he was transferred to the tuberculosis section of the Charity Hospital in New Orleans, Louisiana, where he remained for three months before leaving, against medical advice. In September, of 1961, he was convicted of unlawfully having possession of narcotics, and on October 11, 1961, was sentenced to five years at the Louisiana State Penitentiary at Angola, Louisiana. On May 14, 1962, he was transferred from Angola, Louisiana, to the Greenwell Springs Tuberculosis Hospital in Greenwell Springs, Louisiana, where, on May

15, 1962, a right upper lobe lobectomy for residual destructive disease in the right upper lobe was performed. He recovered satisfactorily from this operative procedure and was transferred back to the Penitentiary at Angola, Louisiana, on May 31, 1962.

As noted earlier, plaintiff worked as a longshoreman before he allegedly became disabled, and during the course of his employment with Lykes Brothers Steamship Company, in 1957 or 1958, he was involved in an accident in which he lost the distal phalanx of his right thumb. Suit was filed in his behalf under the Louisiana Workmen's Compensation Act, and he was awarded the sum of $35 per week for 300 weeks, representing an award for a 75 per cent permanent disability under the provisions of the Louisiana Workmen's Compensation Act. Thereafter he went back to work as a water boy on the riverfront.

Plaintiff, in his present application for disability benefits, alleged only that he was forced to stop working as a longshoreman in June, of 1960, because of tuberculosis. No mention was made by him in his application of any disability caused by impairment of his right hand and thumb. Petitioner now, however, alleges that he is also disabled because of the hand injury. The Hearing Examiner concluded, and rightly so, that after the hand injury plaintiff "worked thereafter and did not stop until June of 1960, and then because of tuberculosis and not due to any impairment of the right arm or hand." There is certainly substantial evidence to support this conclusion. Accordingly, the Hearing Examiner considered only the question of whether or not, because of tuberculosis, the plaintiff is disabled within the meaning and intendment of the Social Security Act. The only matter left for this Court to determine is whether or not the Secretary's conclusion as to plaintiff's ability to engage in gainful occupation is supported by substantial evidence.

The medical report of Dr. Dwight S. Dangburg, Superintendent and Medical Director of the Greenwell Springs Tuberculosis Hospital, indicates that plaintiff was admitted to the hospital on May 14, 1962. The report further states that "the patient is a slightly obese white male who does not appear acutely ill." The diagnosis on that date as contained in the report stated: "Far Adv. Pul. Tbc., active, improved."

As previously indicated, on May 15, 1962, a right upper lobe lobectomy for residual destructive disease of the right upper lobe was performed on the plaintiff. Although he suffered some fever after the operation, he was returned to the Penitentiary at Angola, Louisiana, on May 31, 1962, only two weeks after surgery. Upon his return to Angola he was placed on light duty. His main duties consisted of cleaning up the cell house, which duties he performed with brooms and mops. Dr. Jacob Faust, who treated the plaintiff at the Greenwell Springs Hospital, indicated in his report of July 25, 1962, that there was no evidence of a respiratory impairment, although he did not perform any pulmonary function tests. When interviewed on October 1, 1962, Doctor Faust stated that plaintiff's tubercular condition had been negative for sputum concentrate smear for about one year, and that he, plaintiff, could do anything but strenuous manual labor. Dr. Faust reiterated his previous statement when interviewed in November, of 1962. Again Dr. Faust stated that there was no indication of any recurrence of tuberculosis in the plaintiff and that he felt that petitioner could do moderately heavy work without difficulty. Dr. Faust did admit that the plaintiff could not do the work of a longshoreman nor could he do arduous manual labor. However, the doctor pointed out that this plaintiff is capable of performing work of a moderately heavy nature and that he could do this work without any difficulty.

Also testifying at the hearing was Dr. Russel E. Helmick, a vocational consultant under contract with the Department of Health, Education and Welfare. Testifying as an expert, Dr. Helmick stated that he had examined the record of the

plaintiff and that he had reached the conclusion that the plaintiff could be gainfully employed in many positions or occupations in the community. It was Dr. Helmick's expert opinion that some rehabilitation might be necessary, not because of his illness, but because of the fact that the plaintiff had been incarcerated in the Penitentiary. Dr. Helmick concluded that consistent with plaintiff's state of health and his work background, he could work as a laborer in many plants in the vicinity; he could work in a nursery; he could work in some capacity in road building; and as a carpenter's helper. Because of the many recreational areas in the vicinity, Dr. Helmick also noted that the plaintiff might obtain work in municipal services. Considering his past work experience, the doctor also mentioned the possibility of plaintiff working as a cook, delivery man, and bus boy. None of these various occupations would, in the doctor's opinion, be incompatible with the state of plaintiff's health.

■ It is well settled that the findings of the Hearing Examiner, together with inferences drawn therefrom, are final and conclusive if supported by substantial evidence. National Labor Relations Board v. Florida Citrus Canners Cooperative, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); Hobby v. Hodges, 215 F.2d 754 (CA10 1954). Plaintiff asks this Court to reverse the findings of the Secretary and to award him disability benefits under the Social Security Act, or, in the alternative, to remand the case to the Hearing Examiner for the taking of additional evidence, particularly concerning the ability of the plaintiff to perform the jobs listed by the vocational expert. In support of his position the plaintiff relies heavily upon the case of Celebrezze v. O'Brient, 323 F.2d 989 (CA5 1963) and in particular on the following language used by the Fifth Circuit Court of Appeal in that case:

"When a claimant's former employment is the only type of work he is capable of performing, then 'former work' means 'any work' and the requirements of the Act are met." (Citations omitted.)

It must be noted, however, that plaintiff has failed to quote all of the pertinent language of that decision. In that case the plaintiff stated that he was unable to work because of chest pains. The record disclosed that his health was improving and that the impairment was not sufficient to prevent him from performing sedentary shop work or supervisory work. The District Court reversed the findings of the Trial Examiner because it found that there was no showing that light work was available in the general area where the plaintiff lived. Plaintiff's main work experience had been in the field of carpentry. Upon review, the Fifth Circuit Court of Appeal reversed the District Court and affirmed the Secretary. In so doing the Court stated:

"Congress might well have defined disability in broad terms under the Social Security Act and related it to unemployment by qualifying 'any substantial gainful activity' with the words 'available in the claimant's immediate working area' or similar words. That is not the statutory test; the Act is not an unemployment compensation law. Here, as in Hicks:

"'The hardship here seems to lie more in Hicks's inability to find employment than in his incapacity to work. Despite our natural sympathy for Hicks's plight, we cannot order unemployment compensation under the guise of disability insurance.'

"The explicit congressional command is that the impairment must cause 'inability to engage in any substantial gainful activity. See Gotshaw v. Ribicoff, 4 Cir. 1962, 307 F.2d 840, 844; Pearman v. Ribicoff, 4 Cir. 1962, 307 F.2d 573, 574; and Adams v. Flemming, 2 Cir. 1960, 276 F.2d 901.

"In this case, as in all of these disability cases under the Act, the plaintiff asks the inevitable rhetorical

question: What jobs are there? For the Secretary, 'What jobs are there' means, within the context of the Act, what kinds of work can the claimant perform, not what jobs are there available for him in Kosciusko, Mississippi. See Kerner v. Fleming, 2 Cir. 1962, 283 F.2d 916; Graham v. Ribicoff, 9 Cir. 1962, 295 F.2d 391; Rinaldi v. Ribicoff, 2 Cir. 1963, 305 F.2d 548. In the light of this correct understanding of the law, the Secretary's showing of O'Brient's ability to perform light work of a various nature is all the answer he is required to make to the claimant.

"When a claimant's former employment is the only type of work he is capable of performing, then 'former work' means 'any work' and the requirements of the Act are met. This was the situation in Ferran v. Flemming, 5 Cir. 1961, 293 F.2d 568; Butler v. Flemming, 5 Cir. 1961, 288 F.2d 591; Flemming v. Booker, 5 Cir. 1960, 283 F.2d 321; Ribicoff v. Hughes, 8 Cir. 1961, 295 F.2d 833; Kohrs v. Flemming, 8 Cir. 1959, 272 F.2d 731; Kerner v. Flemming, 2 Cir. 1960, 283 F.2d 916. But impairment to carry on one's *former work* is not enough in itself to satisfy the statutory definition of 'any substantial gainful activity.' Thus in Hicks this Court pointed out that the word 'any' includes former work and work of a different nature:

> " 'To establish a disability under 42 U.S.C.A. § 416(i) a claimant must do more than show that he is unable to do his former work; he must be unable to perform any substantial, gainful work, including work of a physically or emotionally lighter type.' "

■■ In the present case there is an abundance of evidence in this record to support the Secretary's conclusion that the plaintiff is not disabled to the extent of being unable to engage in any substantial gainful activity. It is not for this Court to try, de novo, the fact issues involved. It is only for this Court to determine whether or not the findings of the Hearing Examiner are supported by substantial evidence. Since this Court does find that the Hearing Examiner's findings are supported by substantial evidence, nothing would be gained by remanding this matter for the taking of additional testimony. Thus, the decision of the Hearing Examiner must be affirmed, and judgment will be rendered accordingly.