Mrs. Joe L. BENNETT

v.

John W. GARDNER, Secretary of Health, Education and Welfare of the United States.

Civ. A. No. 11492.

United States District Court
W. D. Louisiana,
Shreveport Division.

July 29, 1966.

Alfred E. Soderman, Shreveport, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BEN C. DAWKINS, Jr., Chief Judge.

This is an action under Section 205 (g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain review of a decision of the Secretary denying claimant's application for a period of disability and for monthly disability insurance benefits. The Secretary has moved for summary judgment in his favor, the case being submitted on the administrative record.

Claimant filed an application for disability benefits February 12, 1964 alleging disability from December 20, 1961 because of back trouble, swollen thyroid gland and high blood pressure.[1] This application was denied by the Social Security Administration on April 14, 1964, and again denied on reconsideration on July 9, 1964. A hearing was held on September 16, 1964, which resulted in a decision favorable to claimant, establishing a period of disability. Under the authority of the Social Security Administration Regulations, 20 CFR § 404.-947, the Appeals Council reviewed the hearing examiner's decision, after having ordered additional medical evidence. In an exhaustive opinion, the Appeals Council reversed the hearing examiner, and denied claimant's application. This final decision is now before us for review under section 205(g), 42 U.S.C. § 405(g).

After a thorough review of the administrative record, we have concluded that this case is one of those controlled by the provisions of section 205(g)—that is, conclusive, as supported by substantial evidence. Throughout our consideration of this record, we have endeavored to protect the rights of claimant to the maximum, as her employed counsel has declined to favor us with his views, by brief

---

1. A previous application was filed on April 6, 1962 alleging disability from the same date. This application was denied by the Social Security Administration on July 5, 1962, and no appeal was taken by claimant.

or otherwise, although ample time was afforded.

The record reveals that claimant is a Negro female resident of Shreveport, Louisiana, who alleges she was born on May 14, 1915. She had previously given the year of her birth as 1917, 1920, and 1921. She completed the tenth grade and has been primarily employed as a maid, her most recent employment having been that of cleaning offices at night in a downtown office building. Her claimed disability stems from a fall which occurred on the job on December 20, 1961. Thereafter she attempted to work twice, but claims she felt unable to perform the duties required. Her chief complaints are nervousness, "fluttering heart," high blood pressure, "blackout spells," and back trouble with numbness of the arms and shoulders.

■ In order to prevail in her claim for benefits claimant must show that she was disabled within the meaning of sections 216(i) (1) and 223(c) (2) of the Act, 42 U.S.C. §§ 416(i) (1) and 423 (c) (2). Succinctly stated, the Act provides that for purposes of entitlement to disability insurance benefits, "disability" means inability to engage in any substantial gainful activity because of medically determinable physical or mental impairment which can be expected to continue for a long and indefinite period of time, or to result in death. Whether an impairment in a particular case constitutes a disability is determined from all the facts of the case. Primary consideration is given to the severity of the individual's impairment. Consideration is also to be given to such other factors as the individual's age, education, training and work experience. 20 CFR § 404.-1502.

■ Medical considerations alone may justify a denial of benefits when the impairment is a slight abnormality or a combination of slight abnormalities. Impairments which are so severe that they in fact prevent the individual from engaging in any substantial gainful activity must be established by medical evidence which shows a lack of ability to perform significant functions—such as moving about, handling objects, hearing or speaking—that such individual cannot, with his age, training, education, and work experience, engage in any kind of substantial gainful activity. 20 CFR § 404.1502.

It would indeed be difficult to consider and discuss the relevant medical evidence in more detail than did the Appeals Council; however, a brief summary is necessary for proper disposition. The earliest medical reports were furnished by Dr. Albert I. Clark, a general practitioner, who began treating claimant in July, 1961 for thyrotoxicosis (hyperactive thyroid gland, often called Graves' disease). Dr. Clark indicated that the fall in December, 1961 aggravated claimant's condition, which also included high blood pressure, a slightly enlarged heart, and tremor of the hands. From an examination as late as September 15, 1964 he believed her to be totally disabled since 1961, noting objective findings of blood pressure, 210/110, and pulse, 96.

Dr. E. T. Hilton, a general practitioner, saw claimant after her fall of December 20, 1961 and in his report of April 10, 1962 noted a diagnosis of diffuse hyperthyroidism and that she failed to respond to medication. He believed surgery was too dangerous at the time, and felt that claimant was unable to continue employment.

An internist, Dr. James W. Wilson, in consultation with Dr. Clark, from an examination of claimant on March 27, 1962, indicated that she was suffering from hyperthyroidism and hypertension, with secondary cardiac disease, making her a functional Class III. His opinion was not, however, based upon X-rays, EKGs, or laboratory diagnostic tests.

A more complete examination was performed on June 7, 1962 by Dr. Samuel L. Lieber, a specialist in internal medicine, who interpreted claimant's EKG to be slightly abnormal. He also noted a mild cardiac enlargement on X-ray. His diagnosis was mild cardiac decompensation, Class I, with arteriosclerosis, associated

with thyrotoxicosis. Dr. Lieber felt claimant's heart disease not to be disabling as long as her thyroid condition was controlled, but had to defer to an orthopedist for the claimed disabling effects of claimant's back.

With respect to the complaints of back injury, Dr. Ford J. Macpherson, a specialist in orthopedics, examined claimant on June 13, 1962. This specialist found no X-ray evidence of orthopedic disability. Various reaction tests were performed, in addition, which led the doctor to state: "Examination reveals a slightly built 43 year old colored female who is grossly exaggerating and definitely malingering." He attributed her nervousness to her thyroid disease and hypertension.

Examination on March 9, 1964 (being after denial of claimant's application, but prior to the hearing before the hearing examiner) by Dr. John G. Wafer, a specialist in internal medicine, who, on X-rays, EKG, and other clinical evidence, found claimant to have Class II functional capacity, and be of the therapeutic classification, Class B. He noted mild enlargement of the heart, mild arterial hypertension and a toxic goiter. He felt, however, that the only limiting factor as far as gainful employment was concerned was the difficulty she stated she was having with her back, which was not assessed by the internist, and that "the cardiovascular disease and thyroid disease at present are not disabling."

Because of the continuing possibility of back involvement, Dr. Ray E. King, an orthopedic surgeon, was called to evaluate claimant's back. After an examination on March 27, 1964, Dr. King concluded:

"This patient holds her low back stiffly and avoids motion and bending which I believe is on a voluntary basis. I can find no definite clinical or x-ray evidence of residual disability as far as the low back is concerned and from an orthopedic standpoint, this patient of course could continue her regular work including cleaning floors, etc."

It was upon this state of the medical evidence that the hearing examiner, on September 15, 1964, found claimant to be disabled under the Act. Perhaps because it thought there was a discrepancy between the early medical evidence, and that which was more recent, the Appeals Council ordered an additional examination, which was performed on January 4, 1965, by Dr. Robert P. Bays, a specialist in internal medicine. In an exhaustive report, based upon x-ray, EKG and other clinical tests, Dr. Bays made seven positive diagnoses, including hyperthyroidism, apparently controlled and hypertensive cardiovascular disease, Class 2B. His final conclusions were as follows:

"I detect no condition to explain the severity of her symptoms. The impairments listed above should not preclude performing moderately active work. The strongly positive straight leg raising test in the presence of her ability to sit with knees extended on a flat surface cannot be explained on the basis of any recognizable disease process. Mild elevation of sedimentation rate is quite likely due to her urinary tract infection. The nodule noted in the breast could be of serious consequence but it probably does not contribute to her symptoms. Considering her outstanding symptoms of dyspnea and borderline cardiac enlargement, a trial on digitalis would be worthwhile, although there is no overt evidence of congestive heart failure."

Turning now to a consideration of each of claimant's asserted impairments, we find the claimed disability based primarily upon the back injury of 1961, thyroid disorder, high blood pressure and other heart symptoms. With respect to the back difficulty, the Appeals Council's conclusion that the credible evidence did not support any organic disease or disorder was clearly correct. Both orthopedists believed that the exhibited limitation of motion was voluntary, as were the other subjective complaints, and that there was no disease or structural damage so as to be incapacitating.

Even a cursory examination of the record would reveal that claimant's complaints stem from the thyroid disorder. The internists seem to agree that hyperthyroidism can produce varying, somewhat unusual symptoms. For example, the melanosis (splotchy pigmentation of the skin) detected by Dr. Bays, can only be attributable to the thyroid disorder. The specialists in this field were in agreement that such a condition in claimant is controllable; indeed, the early medical reports indicated that treatment with radio-active iodine had caused remission of the disease. The Appeals Council's consideration of this abnormality was based upon 20 CFR 404.1518(a), setting forth the general guidelines to be used in the assessment of impairments involving the endocrine system:

"In determining the effect of impairments resulting from diseases of the endocrine system, history, physical findings and laboratory tests are needed. The therapeutic history is particularly significant. Among the endocrine disorders which may produce severe loss of function are those of the adrenal, parathyroid, thyroid, pituitary and pancreas. Most of these disorders are amenable to therapy. Where there are severe irreversible end-organ residuals, therapeutic management may not result in significant alteration of function."

Considering the relevant medical evidence with respect to the therapeutic management of claimant's thyroid disorder, we are in accord with the conclusion of the Appeals Council that there is no evidence of significant end-organ damage that could be ascribed to claimant's glandular problem. Although no serious thyroid disfunction was shown, the noted abnormalities were the likely result of claimant's neglect to continue the use of medication which would alleviate it.

Lastly, the Appeals Council's conclusion that claimant's hypertension and cardio-vascular disease was not so severe as to be expected to impose actual limitation of organic functions is supported by the record. Her heart was rated under the functional and therapeutic classification of the American Heart Association as I–A (i. e., no limitation of physical activity) or II–B (slight limitation on physical activities). Thus the cardiac findings support the conclusion that claimant possessed adequate heart reserve to sustain at least light to moderate physical exertion.

Notwithstanding that the Regulations provide that medical considerations alone may justify a finding that the individual is not under a disability where the only impairment is slight or is a combination of slight impairments, 20 CFR § 404.1502(a), the Appeals Council examined the testimony of the vocational consultant at the hearing, one F. Fagan Thompson, Ph.D. Dr. Thompson's testimony indicated that claimant would be unable to continue employment which required back bending and lifting, and thus would be disabled from her usual occupation as a maid. The Appeals Council found that Dr. Thompson's opinion had been based upon the assumption that the claimant was suffering from a significant back disorder, which assumption was not supported by the medical evidence. We agree with the Appeals Council that the relevant orthopedic evaluations do not demonstrate that claimant is unable to engage in moderate exertion or to perform normal working movements such as bending, twisting, standing, stooping, kneeling, squatting, grasping, manipulating, etc. The duties of a maid, especially a domestic maid, are regarded as "light" to "moderate" and do not require any physical or mental demands that would exceed claimant's physical and mental capacities.

This case is unusual and has merited our close scrutiny for two reasons. First, a hearing examiner rendered a decision favorable to claimant, which was *reversed* by the Appeals Council; and second, claimant's counsel has failed to apprise us of his specific objections to the judgment of the Appeals Council. But in the final analysis, on the basis of the exhaustive and ana-

lytic opinion rendered by that body, we have no alternative under the law but to affirm the Secretary's conclusion, as being based on substantial evidence. See Celebrezze v. Zimmerman, 339 F.2d 496 (5 Cir. 1964); Aldridge v. Celebrezze, 339 F.2d 190 (5 Cir. 1964); Celebrezze v. O'Brient, 323 F.2d 989 (5 Cir. 1963).

For the reasons assigned the motion for summary judgment filed on behalf of the Secretary is granted, the decision complained of is affirmed, and the action is dismissed at claimant's costs in accordance with section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g).