Charles W. McGEE, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE OF the UNITED STATES of America, Defendant.

Civ. No. 2526.

United States District Court
D. Montana,
Great Falls Division.

June 22, 1965.

John C. Hoyt, Great Falls, Mont., for plaintiff.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Montana, for defendant.

JAMESON, District Judge.

This is an action to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's application to establish a period of disability and for an award of disability insurance benefits. This court has jurisdiction under 42 U.S.C.A. § 405(g).

Plaintiff filed an application on September 25, 1962, for insurance benefits, alleging that he had been continuously disabled under the provisions of the Social Security Act [1] since September 26, 1961. His claim was denied by the Social Security Administration on January 2, 1963. On request for reconsideration, it was again denied on August 26, 1963.

Upon plaintiff's request, a hearing was held on January 30, 1964. The hearing examiner found that "during the effective period of the application herein (1) claimant has failed to establish the existence of a medically-determinable impairment and (2) that any impairment which may be present has not been shown to be of the degree of severity as to have precluded him from the performance of any substantial gainful activity within

the meaning of the Social Security Act, as amended". This decision became final when the Appeals Council denied review on September 16, 1964.

Section 205(g) of the Act, 42 U.S.C.A. § 405(g), provides in pertinent part:

" * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under this section of the Social Security Act "the board's findings of fact must be sustained if the court finds they are supported by substantial evidence. This same finality extends to the board's inferences and conclusions from the evidence if a substantial basis is found for them. * * * The board's decisions interpreting the Act and regulations are entitled to weight; the board's findings of fact, if supported by substantial evidence, are conclusive." United States v. Lalone, 9 Cir. 1945, 152 F.2d 43, 45.

As noted in McMullen v. Celebrezze, 9 Cir. 1964, 335 F.2d 811, 814, "This does not mean that it was intended that the courts should abdicate their conventional judicial function to review (Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456); and where the 'administrative decision is based upon conclusions not reasonably reached upon due consideration of all the relevant issues presented' (Jacobson v. Folsom, S.D.N.Y.1957, 158 F.Supp. 281, 285), or applies an arbitrary standard (Flemming v. Lindgren, 9 Cir. 1960, 275 F.2d 596, 597), the court may properly reject the agency's decision."

The primary question for determination is whether there is substantial evi-

---

1. The term "disability" is defined as " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C.A. § 416(i) (1).

dence to support the findings of the Secretary, based on the finding of the hearing examiner that plaintiff failed to sustain his burden of showing that he was "disabled" within the meaning of the Social Security Act. See Galli v. Celebrezze, 9 Cir. 1964, 339 F.2d 924 and cases there cited.

As Judge Murray said in Ryan v. Flemming, D.Mont.1960, 187 F.Supp. 655, " * * * the burden of proof rests upon one who files a claim with an administrative agency to establish that the required conditions of eligibility have been met (citing cases) and * * * the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

█ The elements of proof to be considered in determining whether a claimant has established his inability to engage in any substantial gainful activity are generally stated substantially as follows: (1) The objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective elements of pain and disability testified to by the claimant; and (4) the claimant's educational background, work history and age. Underwood v. Ribicoff, 4 Cir. 1962, 298 F.2d 850; Jenkins v. Celebrezze, 4 Cir. 1964, 335 F.2d 6. These elements may be considered in determining whether under the evidence as a whole there is a "medically determinable physical or men-·tal impairment" within the meaning of the act.

In his application for disability insurance benefits, plaintiff describes the impairment as "back, shoulder and neck injury, arthritis aggravated by the injury". His background, work experience, injury and claim of disability are fairly summarized by the hearing examiner as follows:

"Claimant who is 54 years of age, was born on August 17, 1909, in the State of Montana, and completed the eighth grade of schooling in that State. His work experience, chronologically, from the time he left school may be summarized as follows: as a miner, doing drilling, timbering and blasting; for the Montana State Highway Department driving a grader and doing pick and shovel work; driving a truck and grader for a private construction firm; as a crane operator and oiler. Claimant has also spent a number of years in dry land farming in the area of Great Falls. He testified that his work experience could be divided approximately evenly between mining and construction work, and, to a lesser extent, farm or ranch work. On September 26, 1961, the alleged time of disability onset he was engaged in certain bridge construction and was atop a piling, strapped to a ladder, when a section of the ladder broke in such a manner that he swung through an arc some twenty feet below, striking the front of his body against another ladder. He suffered bruises and was hospitalized for several days. He was not rendered unconscious. There were no fractures. He testified that upon being released from the hospital he stayed home in bed for about three months. After that he began to be up and about but has not sought employment. He states that constant right arm and shoulder and upper back pain would prevent his being employed; and that such pain is 'enough to make you scream'. His time is spent reading, taking walks, visiting with friends. He occasionally drives his car, a 1957 Chevrolet, but states that he has driven very little since late 1962. He takes at least one prescription pain pill daily. The September 1961 injury was the subject of an industrial injury claim which resulted in a lump sum settlement in the amount of $7250.00, based on an award of fifty percent permanent partial disability."

Plaintiff was married in October, 1961. His wife is employed as postmistress at Neihart, Montana, and has supported

plaintiff since their marriage. Plaintiff's earnings record shows that for the 11 year period from 1951 to 1961 inclusive, he earned a total of $10,040.09. In 1952 and 1953 his earnings were slightly in excess of $2,000. In 1961 they were $2,609.53. For the remaining eight years they ranged from nothing to $900. Plaintiff testified that from 1954 to 1958 he was "on the ranch, sharecropping for almost four years".

Plaintiff has not at any time since the accident of September 26, 1961, applied for any job or tried to do any work. He testified that "there was no use". He contends that he is unable to do any of the work he did before the accident or any other work for which he is qualified.

Reports from five physicians were received in evidence. Two of the reports were from Dr. J. F. McGregor, plaintiff's treating physician, and one report was received from Dr. Donald G. Fletcher of Conrad, Montana, directed to plaintiff's attorney. The remaining reports were submitted by three physicians of the Great Falls Clinic and were directed either to the Industrial Accident Board of the State of Montana in connection with plaintiff's compensation claim or to the Medical Consultant, Director of Vocational Rehabilitation, Social Security Administration.

After reviewing the medical reports, the hearing examiner set forth his conclusions as follows:

"A determination of disability must be based in large part on competent medical evidence. A review of the various medical reports herein fails, in the examiner's opinion, to establish an impairment as contemplated by the disability provisions. There are not significant conflicts in the reports which show that on September 26, 1961, the claimant suffered an injury which caused contusions but no broken bones or internal injuries; that thereafter and continuing to the present time he has complained of neck pain, right arm pain, shoulder pain and low back pain but principally of neck and shoulder pain; and that the numerous complaints are disproportionate to the medical findings of record which are minimal and which fail to show atrophy, loss of reflexes, loss of spinal, cervical or other bending movements or any objective sign of an impaired right arm or shoulder. Under these circumstances the objective medical facts as shown throw considerable doubt on the existence of a medically-determinable impairment and would support a conclusion that claimant has adequate capacity and could return to any of his previous occupations were he so motivated."

"Assuming, however, as suggested on one or two of the reports that as a result of the 1961 injury claimant has some permanent loss of sensation in his right arm and shoulder, and that such lost sensation is sufficient to preclude on a permanent basis a return by claimant to mining, farming or construction type of work, the same evidence does not show that claimant would thereby be precluded from the performance of any work activity, for example work of a light or sedentary nature."

A letter from Dr. McGregor dated August 16, 1962, addressed to the Hearing Officer of the State Industrial Accident Board, reads in part:

"The x-ray studies of this man . indicate definite, extensive, cervical disc pathology with severe disc degeneration between C-5, 6 and 7. The disc degeneration causes the cartilege to give way and the discs therefore collapse. This is a permanent situation.

"In view of this man's age and lack of education or vocational training it would appear that his productive working days are ended, as he will not be able to engage in the heavy type of labor activities by which he has always earned his live-

lihood. He would, of course, be able to undertake sedentary type work, if he had the training to qualify for a job in this area, which however, is most doubtful in the case of this man.

"Based upon the x-ray studies, my examinations of this man, his age and lack of education, it is my opinion that he would have to be considered to have in the neighborhood of a 75% permanent disability of the body as a whole."

A letter from Dr. Fletcher, dated January 24, 1964, and covering his examination of plaintiff on January 17, 1964, concludes as follows:

"This patient obviously had a serious injury, and has been disabled since the time of the injury. At this time his disability is essentially complete. He has been unable to work, and is decidedly without the qualifications for work other than manual labor. This patient has a rather severe anxiety as to the future, which complicates his examination, exaggerates his symptoms, and increases his disability. This is understandable in view of the present findings. The x-rays of the cervical spine reveal moderate to definite narrowing and arthritis changes of the cervical vertebrae. Strength tests and pinprick examination reveal sensation change and muscular weakness of the right upper extremity. The muscle spasm and loss of motion about the neck and spine are caused by aggravation of the arthritis and by the trauma of the injury itself.

"In my opinion, this patient has twenty-five percent total impairment in terms of his body as a whole.

"If a book-keeper had this impairment, he could work and function almost normally. This man's mentality, his age, and his disability seriously limit his ability to work. He is essentially completely disabled, and will likely remain in this category with little improvement in the future. It is entirely possible that the nerve root pressure about the right shoulder girdle may increase in the future, and additional care become necessary."

Dr. John C. Wolgamot, an orthopaedic surgeon with the Great Falls Clinic, examined plaintiff for the Industrial Accident Board on July 26, 1962 and May 21, 1963, and for the Social Security Administration on or about July 16, 1963. A letter to the medical consultant of the Social Security Administration dated July 16, 1963, reads:

"Two copies of findings on Mr. Charles W. McGee are enclosed.

"I think he is quite a difficult man to evaluate in terms of disability and, I believe, that he does have actual organic pathology, however, it is extremely difficult for me to evaluate the relative percentage of functional and organic elements and perhaps expert evaluation in this regard would be helpful to you. I have had the impression on each time that I have seen him that he is quite depressed. The range of motion is, as you will note, quite limited in the spine, but this is, of course, in large part a subjective finding entirely within the control of the patient to modify if he so elects. He is seemingly disabled as far as his ordinary type of occupation is concerned, but in my opinion, a large portion of his disability may be on a functional basis."

An accompanying report reads in part:

"When seen on July 26, 1962, it was estimated that this patient had approximately 20 to 25% permanent partial disability of the body as a whole. I do not believe that his situation has changed appreciably since that time. It is apparent that this patient feels that he is totally and permanently disabled and there is, in my opinion, an appreciable degree

of functional element involved in his symptomotology. Evaluation of this element would, I believe, be quite helpful. I do not feel that any specific form of treatment directed toward organic pathology would be particularly beneficial."

Dr. E. L. Cashin of the Department of Neurological Surgery of the Great Falls Clinic examined plaintiff for the Industrial Accident Board on July 26, 1962. Dr. Cashin shared Dr. Wolgamot's estimate of disability and concluded his report as follows:

"We believe that this patient has had a fairly severe injury to the cervical spine and has some disability from this. We doubt seriously that he has a herniated intervertebral disc causing his difficulty and would not recommend myelographic study."

Dr. Roger J. White of the Department of Psychiatry of the Great Falls Clinic wrote the Medical Consultant of the Social Security Administration on August 1, 1963, in part as follows:

"Mr. McGee was very pleasant and cooperative with psychiatric examination and readily answered all questions. I felt that he was of at least average intelligence and that his memory was good. I do feel that this man is moderately depressed and that his depression is a reactive phenomenon to his injury. In addition, at this time, he can both be dependent and punished for his dependency by virtue of his physical discomfort.

"Diagnostic Impression: Depressive reaction moderate. Prognosis for complete relief of physical symptoms poor. I do feel that some antidepressant medication might help in this man's condition although I do not feel that this will completely relieve the problem from which he now suffers."

The hearing examiner could properly find from the medical reports that plaintiff's claim of pain, discomfort and total disability was not supported by the findings of at least some of the examining physicians.[2] In this connection, it should be noted also that the examiner had the benefit of observing plaintiff at the hearing.

The authorities do not agree upon any specific test which the Secretary should apply in cases of this nature, due in part, of course, to the fact that no two cases are identical on the facts. The Ninth Circuit case most nearly in point is Graham v. Ribicoff, 1961, 295 F.2d 391, 394. It was there argued, as here, that "the Secretary imposed too severe a test of disability and in effect required appellant to prove total disability or at least negate every possibility of gainful employment". After referring to some of the decisions on which the claimant relied, the court said in part:

"In our opinion the council's finding that Graham's back injury prevents his return to his former work or to work requiring much bending or lifting or heavy manual labor did not require the council to hold that he was suffering a section 223 disability. Nor was such a holding re-

2. This case is distinguishable from such cases as Thompson v. Celebrezze, 6 Cir. 1964, 334 F.2d 412, where the physicians agreed that the claimant was totally disabled from performing any type of work requiring the use of his back.

It is also distinguishable from Joki v. Flemming, Mont.1960, 189 F.Supp. 365, where this court held there was no substantial evidence to support the referee's finding that plaintiff had failed to establish a medically determinable dis-

ability within the meaning of the Act. In that case the medical experts in effect agreed that claimant could not be gainfully employed and must be considered for practical purposes totally disabled. The Government argued that little significance could be given their opinions and conclusions since the administrative agency has the ultimate responsibility in determining the issue of "disability" as defined by the statute.

quired in the light of the council's further finding that Graham has but a fifth-grade education 'and thus is not equipped, either on the basis of his education or his employment background, to engage in certain other types of work.'

"Section 223(c) (2) states that the term 'disability' means inability to engage in 'any substantial gainful activity' by reason of any medically determinable physical or mental impairment. Thus if one insured under the act suffers an injury which prevents him from engaging in his former work, or work which requires certain kinds of physical exertion, but there is a reasonable prospect that he can engage in other substantial gainful activity, disability has not been shown.

\* \* \* \* \*

"A determination of the applicant's ability to engage in substantial gainful employment, commensurate with his background and capacities, 'requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?' Kerner v. Flemming, 2 Cir., 283 F.2d 916, 921. The appeals council found, in effect, that Graham was able to perform work of a sedentary or semi-sedentary nature that would require little or no training for one with no similar previous experience and with a limited education. It also found that there are many job opportunities available for persons who can do this limited kind of work."

In Graham v. Ribicoff the court also recognized the propriety of taking "administrative notice of industrial and governmental studies bearing upon the employment opportunities of persons suffering physical impairments of various kinds, including those of the kind suffered by Graham." The hearing examiner relied upon some of these studies in this case. While they have been criticized in some cases, the justification of

their use was set forth in Rinaldi v. Ribicoff, 2 Cir. 1962, 305 F.2d 548, 549, as follows:

"\* \* \* The Hearing Examiner failed to specify what employment opportunities were available to claimant but cited The Performance of Physically Impaired Workers in the Manufacturing Industries, Bulletin No. 923, U. S. Department of Labor (1947) and Disability Evaluation Principles of Treatment on Compensable Injuries, by Dr. Earl D. McBride, 667–692 (5 ed. 1953). Notice of such studies was permitted, without objection, in Graham v. Ribicoff, supra, and approved in Pollak v. Ribicoff, supra, 300 F.2d [674] at 678. A chief value of the administrative procedure is the expertise of the examiners and the range of evidence which is permitted to be introduced unhampered by technical rules of evidence."

Graham v. Ribicoff and Rinaldi v. Ribicoff were cited by the Court of Appeals for the Fifth Circuit in Celebrezze v. O'Brient, 1963, 323 F.2d 989, 992, in support of the following rule:

"In this case, as in all of these disability cases under the Act, the plaintiff asks the inevitable rhetorical question: What jobs are there? For the Secretary, 'What jobs are there' means, within the context of the Act, what kinds of work can the claimant perform, not what jobs are there available for him in Kosciusko, Mississippi. (Citing cases). In the light of this correct understanding of the law, the Secretary's showing of O'Brient's ability to perform light work of a various nature is all the answer he is required to make to the claimant."

As noted supra, this court may not substitute its judgment for that of the Secretary. I must conclude that there is substantial evidence to support his findings.

It is ordered that the decision of the Secretary is affirmed.