Everett L. RUSSELL, Plaintiff,

v.

Wilbur COHEN, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 751.

United States District Court
D. Montana,
Billings Division.

Oct. 14, 1969.

Vernard C. Anderson, Jr., Billings, Mont., and Jerrold R. Richards, Helena, Mont., for plaintiff.

Otis L. Packwood, U. S. Atty., and Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for defendant.

## ORDER AND MEMORANDUM OPINION

JAMESON, District Judge.

This is an action to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's application to establish a period of disability and for an award of disability insurance benefits.

Plaintiff filed his present application in Missouri on January 3, 1966, alleging that he became disabled in "1955" by reason of "Heart condition, Nervous breakdown and black out spells". The application was denied on April 7, 1966, and upon request for reconsideration was again denied on June 13, 1967.

Following a hearing in Great Falls, Montana, on January 29, 1968, the Hearing Examiner rendered his decision on February 21, 1968, finding that plaintiff was "not entitled to a period of disability or to disability insurance benefits under the provisions of sections 216(i) and 223, respectively of the Social Security Act".[1] The Appeals Council denied review on April 29, 1968. This action was timely filed on June 7, 1968.[2]

---

1. As amended in 1965, sections 216(i) and 223(d) of the Social Security Act (42 U.S.C. §§ 416(i) and 423(d) (1)) define disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *".

2. Defendant's answer and a transcript of the record were filed October 14, 1968. On November 29, 1968, defendant filed a motion for summary judgment with supporting brief. By order entered December 10, 1968, plaintiff was granted 30 days for answer brief. On May 1, 1969, defendant's motion for summary judgment was set for hearing on June 3, 1969, with a provision in the order that the motion "would be deemed submitted at the close of the hearing", whether or not plaintiff's answer brief had been filed. Counsel for plaintiff did not submit any brief and made no oral argument at the hearing. The court then gave plaintiff until June

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides in pertinent part:

" * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under this section of the Social Security Act, "it is the Secretary's sole responsibility to weigh the evidence and determine whether a claimant has established his disability within the meaning of the Act, and the court's only function is to review the record to determine whether there is any substantial evidence in that record to support the Secretary's decision. If there is such substantial evidence the court has no alternative but to affirm the decision, even though the court, if it were to weigh the evidence, would come to a different decision". McKerron v. Celebrezze, D. Mont. 1966, 261 F.Supp. 193, 195.[3] The same finality extends to "inferences and conclusions from the evidence if a substantial basis is found for them". The Secretary's decisions "interpreting the Act and regulations are entitled to weight", but the findings of fact, "if supported by substantial evidence, are conclusive". United States v. LaLone, 9 Cir. 1945, 152 F.2d 43, 44, 45.[4]

Plaintiff seeks a remand for the following reasons:

"1. Plaintiff's psychological condition was not considered;

"2. No evidence was presented or finding made as to the availability of work it was found Plaintiff able to do;

"3. No finding was made as to whether claimant's impairments even though not objectively disabling, would prevent employers from hiring him.

"4. The Hearing Examiner relied solely upon the Labor Department's *Dictionary of Occupational Titles* in finding claimant qualified and able to do restaurant work;

"5. Claimant was not represented by counsel before the Hearing Examiner and a better record for review can now be made."

Plaintiff's earning record shows that he met the earnings requirements of the Social Security Act only through September 30, 1964.[5] Therefore, as the Hearing Examiner correctly pointed out, "it is necessary for the claimant to establish that he was under a 'disability' from a time on or prior to September 30, 1964".

For several years plaintiff has been disputing his ability to work. On October 21, 1963, he filed in Arkansas an application for Social Security Disability Insurance Benefits, certifying that he became unable to work on July 12, 1963, by

30, 1969, to file brief. Plaintiff's counsel has promised orally on many occasions since June 30 to file a brief within a "few days" thereafter, but to date no brief has been filed. While the court does not have the benefit of any brief from plaintiff, careful consideration has been given to all of plaintiff's contentions as set forth in his complaint.

3. See also Galli v. Celebrezze, 9 Cir. 1964, 339 F.2d 924 and cases there cited.

4. As noted in McMullen v. Celebrezze, 9 Cir. 1964, 335 F.2d 811, 814, n. 4, cert. den. 382 U.S. 854, 86 S.Ct. 106, 15 L.Ed. 2d 92, reh. den. 382 U.S. 922, 86 S.Ct. 295, 15 L.Ed.2d 238, "This does not mean that it was intended that the courts should abdicate their conventional judi-

cial function to review (Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456); and where the 'administrative decision is based upon conclusions not reasonably reached upon due consideration of all the relevant issues presented' (Jacobson v. Folsom, S.D.N.Y.1957, 158 F.Supp. 281, 285), or applies an arbitrary standard (Flemming v. Lindgren, 9 Cir. 1960, 275 F.2d 596, 597), the court may properly reject the agency's decision."

5. Plaintiff also earned $310.26 during the second quarter of 1965. He did not, however, work any of the six quarters from October 1, 1963, to April 1, 1965, and accordingly did not qualify for an insured status subsequent to September 30, 1964.

reason of "Black out spells (and) epilepsy". This application was denied on February 25, 1964. Plaintiff requested a reconsideration, claiming that he was suffering from "heart condition, nervous condition, and also ulcers and black-out spells, or epilepsy". The claim was again denied on June 27, 1964. No appeal was taken.

Plaintiff was the only witness at the hearing,[6] held January 29, 1968. The testimony consisted of an informal dialogue between the Examiner and plaintiff. Most of the questions and answers related to plaintiff's present living conditions, although the Examiner had made it clear to plaintiff that the only relevant evidence was plaintiff's medical condition on or before September 30, 1964.

It appeared from plaintiff's testimony that he is now 47 years old and lives in a third floor hotel room in Great Falls, Montana. Since the hotel has no elevator, he walks the stairs each day. He receives $104 per month from the Veteran's Administration for a nonservice connected disability. After paying $45 per month for rent, he has $59 from his V. A. pension to spend each month. He described his daily routine as coming down from his hotel room at about eleven-thirty in the morning, "hanging around" a nearby restaurant and bar during the day, and retiring to his room again about "eight or nine o'clock".

Plaintiff's work record indicates he has never held a job beyond a few months. Since his five and one half year service in the Army from 1940 to 1945, he has drifted all over the country. The last time he worked was during the second quarter of 1965, at which time he was a dishwasher in Milwaukee, Wisconsin. However, he did not work during 1964, so the last date on which he met the eligibility requirements for disability insurance under the Social Security Act was September 30, 1964. (See note 5, supra.)

30 exhibits were received in evidence at the hearing, including reports from four physicians who had examined plaintiff and the medical records at three V. A. hospitals, where he had received treatments.

In his decision the Examiner found:

"1. As of September 30, 1964, the claimant suffered with a possible organic heart disease, possible arteriosclerotic heart disease, and with a history of posttraumatic seizures of short duration.

"2. These conditions are all of a minor degree of severity. They can be controlled and managed with medication and therapy with reasonable effort and safety to himself.

"3. The claimant retains the ability to perform on a full time basis work classified as requiring sedentary, light, or moderate physical activity.

"4. The correct date of the claimant's birth is not material to this decision, and resolution of that issue is reserved, although the claimant testified he was born on November 17, 1921. He has completed 7 years of formal education.

"5. The claimant has labored as a section hand for railroads; he has performed ranch work; he has driven tractors and trucks; and he pressed fenders and buffed for General Motors. He most recently washed dishes and did related work for hotels and restaurants.

"6. The claimant retains the physical and mental capacity to perform some of his former jobs, such as dishwashing and related hotel and restaurant work. In addition, he is able to perform many other jobs that require only sedentary, light, or moderate physical effort; some of these are enumerated, supra.

---

6. Dr. Robert E. Gorman, a vocational expert, was scheduled to testify on behalf of the Social Security Administration concerning plaintiff's work potential. He broke his ankle shortly before the hearing and was unable to appear.

"7. The claimant met the special earnings requirement of the Act in 1955, the earliest alleged date of disability, and continued to meet these requirements to September 30, 1964, but not thereafter.

"8. The claimant has failed to establish the presence of an impairment, or a combination of impairments, of such a degree of severity as to prevent him from engaging in any substantial gainful activity during the critical period.

"9. The claimant was not under a 'disability,' as defined in the Act either prior to or after the Amendments of 1965, at any time during the effective period of his application."

The record contains substantial evidence to sustain the findings and conclusions of the Examiner.

As noted supra (note 1) the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months; * * *." [7]

42 U.S.C. § 423(d) as amended in 1968, also provides:

"(A)n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

The effect of the foregoing amendment was well stated in Huffman v. Gardner, D.Or.1968, 292 F.Supp. 331, 333, where the court said:

"A claimant must demonstrate an inability to perform the type of work in which he was previously engaged and a lack of experience for another occupation. The Secretary then has the burden to show that there are other types of work the claimant can do. Rosin v. Secretary, 379 F.2d 189 (9th Cir. 1967).

" * * * Under the amendment the Secretary need not show that jobs are available in claimant's locale, or that jobs are available for the claimant, or that the claimant would be hired if he applied for work. In other words, the amendment reflects a determination that the Secretary should not be required to prove that this particular claimant could find employment.

"The statute leaves unchanged the principle that to rebut the presumption the Secretary must show that there are employment opportunities for the class of people suffering from the same disabilities as the claimant. The question is whether there are jobs for which the claimant may reasonably be expected to compete; not whether there are any vacancies."

The 1968 Amendment also added as section 423(d) (3) the following: "For purposes of this subsection, a 'physical or mental impairment' is an impairment

---

7. Prior to a July 30, 1965 amendment, Pub.L. 89–97, the definition read:

"(2) The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." 42 U.S.C. § 423(c), prior to amendment.

that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

In Flake v. Gardner, 9 Cir. 1968, 399 F.2d 532, 539, the court says in part: "There is legislative history of new subsection 223(d) (3) * * * indicating that the Congress was concerned that the Secretary and the courts, particularly the latter, were being too liberal in finding disability, thereby jeopardizing the financial stability of the system. * * * " 8

Plaintiff has been examined and treated at several V. A. hospitals since his service in World War II. On August 12, 1963, he entered a V. A. hospital in Poplar Bluff, Missouri. He was treated for a duodenal ulcer which was tested and shown healed three weeks later. He was treated by the dental service for pyorrhea and several dental extractions. On November 14, 1963, he was released with the following comment on his employment status: "The veteran may return to his usual employment."

On February 11, 1964, he was admitted to the V. A. Hospital in Little Rock, Arkansas. He was discharged on March 11, 1964, with the following final diagnosis:

"1. Possible organic heart disease; O & E [observation and examination] completed. * * *

"2. No evidence of any neurological disease. O & E completed.

"3. No evidence of any psychiatric disease. O & E completed."

The reporting doctor concluded:

" * * * This man has apparently been a marginal personality which can be designated by all sorts of discreptive [sic] adjectives which I do not deal and see no point in recording. As far as I can tell there is no neurologic or psychiatric diseases present."

The examination in Arkansas was apparently the last before plaintiff lost his eligibility for disability insurance on September 30, 1964. On June 22, 1965, plaintiff entered the V. A. Domiciliary Hospital at Wood, Wisconsin. He was treated for the following:

"X 1. Undiagnosed disease, manifested by epigastric pain. [The 'X' indicates the 'one diagnosis responsible for the major part of the patient's stay'.]

"2. Chronic alcoholism.

"3. Arteriosclerotic heart disease, manifested by probable old posterior wall infarction as demonstrated on electrocardiogram.

"4. Internal hemorrhoids."

Upon his discharge and transfer to "domiciliary" ten days later, plaintiff was advised (1) that a hemorrhoidectomy might be considered at a later time, (2) that he "continue on a bland diet", (3) "to avoid the use of alcohol", (4) "to continue on gelusil therapy" for an additional six weeks, (5) "to avoid violent exercise", and (6) "to return for re-

8. The Senate Report read in part:
   "The studies of the Committee on Ways and Means indicate that over the past few years the rising cost of the disability insurance program is related, along with other factors, to the way in which the definition of disability has been interpreted. The committee therefore includes in its bill more precise guidelines that are to be used in determining the degree of disability which must exist in order to qualify for disability insurance beneifts.
   * * * * *
   "The impairment which is the basis for the disability must result from anatomical, physiological, or psychological abnormalities which can be shown to exist through the use of medically acceptable clinical and laboratory diagnostic techniques. Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions. * * * " (2 U.S.Code Cong. & Adm. News 1967, p. 2834 ff.)

examination if increasing angina became a problem".

On September 1, 1965, plaintiff entered the Wood, Wisconsin, V. A. Center Hospital. Upon his discharge on September 24, 1965, the following report was made by Dr. E. C. Seno, Staff Physician, Psychiatry:

"This 43 year old, single, white male was admitted to the Psychiatric service at Wood VA Center on 9-1-65, from the Wood domiciliary. He had gone on sick call complaining of chest pains, evidently made some remarks about hating people and thinking of killing people, was referred for psychiatric consultation and was accordingly hospitalized for observation. It turned out that his paranoid expressions of hostility are on, to him, a realistic basis, in that he believes he should have compensation from the VA, he believes that the army should have permitted him to re-enlist and to be a long-term career soldier, and he feels that the world owes him an opportunity to make a good living even though he has poor education and no special skills. Under observation on the psychiatric service he showed no suicidal or homicidal tendencies, no evidence of psychosis, and no need for psychiatric treatment at the present time. It is true that he is emotionally immature and inadequate to handle life's complexities in many ways, as evidenced by our diagnosis of inadequate personality. Medication would not solve his problems and he is not a suitable candidate for psychotherapy. It is the opinion of the psychiatric service staff that he is not dangerous to himself or others. He feels willing and desirous of returning to the domiciliary and to his unpaid work assignment there. He was transferred MHB to domiciliary at Wood effective 9-24-65. No medication is recommended. No special psychiatric followup is recommended."

In addition to the examination and treatment in the V. A. hospitals, plaintiff was examined by three other physicians between January 14, 1964, and April 1, 1968.

On January 14, 1964, plaintiff was examined in Memphis, Tennessee, at the request of the Social Security Administration by Dr. Matthew W. Wood, a neurological surgeon, who reported that, "From an objective neurological standpoint, Mr. Russell was normal". The doctor stated that plaintiff "has had fall out spells since age seven years when he received a head injury from a kick by a horse. Although his electroencephalogram is normal at the present time I believe this patient is having post traumatic seizures, although they are atypical". Medication was prescribed for the "spells" and the doctor stated that plaintiff "should not do any work around moving machinery or at heights".

Plaintiff was examined in Ann Arbor, Michigan, on January 13, 1967, by Dr. W. E. Burns, osteopath, whose report reads in part: "Patient states that he is drawing a 100 per cent disability due to a nervous breakdown * * * in the service. Patient has had this mental illness and is unable to hold a job due to his nervousness. * * * Physical examination is normal". A diagnosis of anxiety neurosis was made.

On April 9, 1968, plaintiff was examined by Dr. Edward R. Hodgson, Director of the Billings, Montana, Mental Hygiene Clinic. In his report to the Social Security Administration (based entirely on his examination and information given him by plaintiff), Dr. Hodgson states that plaintiff "does not at this time show any abnormalities of thought such as illusions or hallucinations but from his description it appears that there are times when he may have feelings, if not delusions, of being mildly persecuted. He is obviously tense, restless and dissatisfied and shows a mild amount of depression". Recognizing that any statement based on a single interview and without record of past evaluation is uncertain, Dr. Hodgson had the impression

that the following diagnoses are reasonable:

"1. Passive-aggressive personality with marked dependency and alcoholism.

"2. Mixed psychoneurosis with anxiety and hysterical features, chronic and severe.

"3. Possibly convulsive disorder."

All of the medical testimony, except the report from Dr. Hodgson, was analyzed in more detail in the Hearing Examiner's decision. This included all of the medical evidence beginning approximately one year before the last eligibility date and continuing for more than two years thereafter. Dr. Hodgson's examination was made subsequent to the Hearing Examiner's decision, but was considered by the Appeals Council as additional evidence.

In addition to the medical testimony, the Hearing Examiner considered all records relating to plaintiff's employment, and the reports of field representatives. As noted supra, all of the findings of the Examiner are supported by substantial evidence.

The Examiner could properly conclude that, "The claimant remains unemployed through choice * * *". Plaintiff admitted at the hearing that he drank a lot,[9] that since his discharge from the Army in 1945 he bummed around, worked and drank all over the country, and had gotten into some trouble because of his drinking. (Tr. p. 10). He last worked for one month in 1965, which of course was subsequent to the eligibility date of September 30, 1964. There is no evidence that subsequent to his discharge from the Veterans hospital in September, 1965, he made any serious effort to find a job or attempted any work.[10] He testi-

fied also that between that date and the hearing in January, 1968, (a period of more than two years) he had not taken any medication or consulted any physician. (Tr. 21).

With reference to the specific allegations in plaintiff's complaint, it is clear from the Examiner's analysis of the medical testimony that there is no merit in plaintiff's first contention that his "psychological condition was not considered". The findings of the Hearing Examiner with reference to work which the plaintiff could perform and its availability in the national economy are sufficient, particularly under the 1968 amendment, and are supported by substantial evidence. The Hearing Examiner was not required under the 1968 amendment to make a finding with reference to plaintiff's impairments "not objectively disabling", the present test requiring a showing of "abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques".

The Hearing Examiner could properly consider in conjunction with other testimony the "Dictionary of Occupational Titles", prepared by the Department of Labor. See Graham v. Ribicoff, 9 Cir. 1961, 295 F.2d 391; Rinaldi v. Ribicoff, 2 Cir. 1962, 305 F.2d 548, 549, 550; McGee v. Secretary, D.Mont.1965, 244 F.Supp. 307, 313.

Failure to be represented by counsel is not in itself a ground for reversal or remand. Plaintiff was advised of his right to be represented by counsel. He was given an opportunity at each stage of the proceeding to submit additional evidence. It is now five years since plaintiff last met the earnings requirement for eligibility for a disability

---

9. This is clear also from the history taken by the various examining physicians, including Dr. Hodgson, whose report states, "He claims that his drinking started in the Service and it has been largely uncontrolled since that time except for periods."

10. Plaintiff testified at the hearing:
"Q Do you ever go to the Montana State Employment Agency and ask them to get you a job?
"A No, I have never been up there, I went up there one time and there was so many guys up there I couldn't sit down so I just turned around and walked out." (Tr. p. 26.)

award. The record contains reports of physicians who examined plaintiff both prior and subsequent to the eligibility date, the last on April 1, 1968. It is difficult to see where a case could be made on remand which would produce a different result.[11]

As noted supra, this court may not substitute its judgment for that of the Secretary. I must conclude from the entire record that there is substantial evidence to support the findings and conclusions of the Examiner. His decision became final when the Appeals Council denied review. The additional evidence submitted to the Appeals Council would not justify a remand.

It is ordered that the decision of the Secretary is affirmed.

---

11. Moreover, it is now more than 16 months since the complaint was filed, one year since the transcript of the record was filed, ten and one-half months since defendant's brief was filed, and nine and one-half months since plaintiff's brief was due. As noted supra (n. 2), plaintiff's counsel has failed to file any brief in support of the allegations of the complaint.