**Pless SEIBER**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. No. 3-74-207.**

United States District Court,
E. D. Tennessee, N. D.

March 5, 1975.

J. Gregory O'Connor, Knoxville, Tenn., for plaintiff.

Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action under Section 205(g), 42 U.S.C. § 405(g), of the Social Security Act to review a final decision made by the Secretary of Health, Education and Welfare that plaintiff, Pless Seiber, is not entitled to a period of disability or disability benefits. More specifically, the Hearing Examiner in this case concluded that "(c)laimant was not under a disability as defined in the Social Security Act, as amended, commencing at any time prior to the issuance of this decision." (T–18) Such an adverse finding became the Secretary's final decision when the Appeals Council affirmed the Hearing Examiner's decision on June 12, 1974. (T–5) The record in this instance consists mainly of plaintiff's application, a transcript of the administrative hearing before the Hearing Examiner, various doctors' reports submitted both prior to and after the hearing, and the Hearing Examiner's decision dated March 27, 1974 (T–13). The Court's scope of review is set forth in the Act itself at 42 U.S.C. § 405(g):

> "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

Plaintiff, age forty-three, married with two children at home, in his original application filed on May 16, 1972, indicated that his principal disability was a pulmonary difficulty stemming from his working in the coal mines and the consequent condition known as pneumoconiosis. Plaintiff in his application indicated that his disability commenced on approximately 6–25–71, the date he last worked in a coal mine. Following a preliminary denial (T–24) and reconsideration (T–77), a hearing was held before an examiner at Knoxville, Tennessee on June 12, 1974, at which time plaintiff, his wife, and an occupational expert testified. Thereafter, additional medical reports were received into the record by the Hearing Examiner, subject to the inspection and comment of plaintiff's at-torney, and on March 27, 1974 findings were adversely made against plaintiff. (T–13–18) The Appeals Council concluded the Hearing Examiner's decision was correct. (T–5) The Secretary submits there is no factual dispute and has moved for summary judgment under Rule 56(b) and (c), F.R.Civ.P.

Though plaintiff initially indicated that his disability stemmed principally from his pneumoconiosis, he also complains of a back disorder, hypertension, and a nervous problem. As a consequence of these disorders or the medication taken to remedy them (T–119), plaintiff has experienced two episodes of blacking out (T–42–43) of moderate duration. Plaintiff also experiences shortness of breath upon moderate exertion and difficulty with breathing at night due to his pneumoconiosis.

At the hearing in Knoxville plaintiff testified that he completed the fourth grade and was capable of reading and writing to a limited extent. Plaintiff's vocational history consists mainly of manual labor in the coal mines and some general construction work. (T–46) Suffering from a blackout in May 1971, plaintiff's alleged disability caused him to leave the mines in June 1971. His wife of twenty-three years testified that her husband experienced trouble with his breathing in addition to some back pain which precludes him from doing household chores. (T–59) Mrs. Seiber indicated her husband had always enjoyed hard work. (T–60)

Doctor James H. Miller, Professor in Rehabilitation Counseling at the University of Tennessee, at the Secretary's request, having previously familiarized himself with plaintiff's vocational history, physical limitations and residual capacities, was posed a hypothetical question which assumed plaintiff suffered a "moderate decrease in pulmonary ventilation" (T–62) and was asked whether a man with plaintiff's residual abilities could perform substantial gainful work in the area which he lives or the region. Mr. Miller responded that he could and commented that plaintiff could perform

bench work of the type found in Knoxville, in additon to custodial and service station attendant work, all of which are available in this area. Altering the hypothetical, the Hearing Examiner asked Mr. Miller to inject back pain of minimal severity (T–66) into his consideration of residual capacity and ability to perform existing jobs. Presented this second hypothetical, Mr. Miller responded this consideration of back pain would narrow the field down to bench work alone. On cross-examination the first hypothetical (without a back problem) was changed to "severe pulmonary problem" rather than "moderate." With this alteration in the hypothetical, Mr. Miller thought even the bench-type job would be beyond plaintiff's residual capacity. It is important therefore to consider whether the medical opinion contained in this record reflects pulmonary restrictions of moderate or severe degree.

The medical evidence in the record is quite complete and apparently speaks to all aspects of plaintiff's disabilities.

Doctor Swann, a thoracic surgeon, and Dr. Smith, a general practitioner, have been treating plaintiff for his disorders, with Dr. Swann treating him for his pneumoconiosis. Plaintiff received treatment for this pulmonary disorder at Fort Sanders Hospital on two occasions, 12–26–71 and 5–23–72. A discharge summary from Fort Sanders Hospital dated December 31, 1971, stated:

Pulmonary function studies showed obstruction of the air-warp with a reduction of the maximum voluntary ventilation to 41 liters per minute . . . (Treatment) . . . The patient had subjective improvement. (T–96)

Plaintiff was again admitted to Fort Sanders Hospital on May 23, 1972 complaining of difficulty in breathing. A discharge summary reveals the following data and remarks:

HOSPITAL COURSE:

Bronchoscopy disclosed inflammatory changes, and treatment utilized chloromycetin as antibiotic coverage . . . (Treatment) . . . He improved, but he had many minor complaints directed to multiple body systems.

ANCILLARY DATA:

Arterial blood gases disclosed a reduction of the PO2 to 66mm . . . The routine laboratory work, including chemistry profile, was unremarkable. Pulmonary function studies done in the hospital laboratory disclose some increase in the lung volume with a predicted normal of 34 per cent and the observed value was 48 . . . (T–98)

On February 3, 1972 Dr. Swann stated in a letter (T–132) that "(t)his man is considered to be totally disabled as far as his usual occupation of underground coal mining is concerned." In June 1972 Dr. Swann reported that plaintiff's chief problem was lack of motivation and that he had the residual functional capacity to perform a wide range of light work. (T–162) More recently a pulmonary ventilatory function study conducted on September 12, 1972 concluded that there existed an "obstructive airways disease of *moderate* severity." (T–104—emphasis added)

Doctor Smith treated plaintiff for bladder and prostate inflammation in 1964–1965 and for an upper respiratory infection and allergic bronchitis in 1970–71. (T–113) Additionally, plaintiff was seen by Dr. Smith in connection with obesity and tension. (T–113) An 11–21–72 plaintiff was seen by Dr. Smith in regard to an acute lumbar sprain.

Doctor Dwight Wade, Jr., specializing in internal medicine, made observations on plaintiff's health on the basis of two examinations in June 1972 and a review of his records. These observations essentially corroborated those of Dr. Swann:

Pulmonary disease, previously diagnosed by Dr. Swann as anthrosilicosis with ventilatory functions consistent with only minimal mechanical impairment and abnormal blood gases in the past. (T–111)

At the request of the Tennessee State Agency, plaintiff was examined in August 1973 by Dr. Herbert F. White, a specialist in internal medicine. After a thorough examination, including pulmonary function studies, electrocardiogram, and PA and lateral chest films, Dr. White diagnosed: (1) asthmatic bronchitis, (2) obesity and (3) chronic anxiety state. In discussing plaintiff's health he stated:

> On physical examination he has loud inspiratory and expiratory ronchi noted without any other abnormality. Chest films are not really remarkable other than showing marked increase in the bronchovascular markings. Pulmonary function studies revealed no more than a moderate decrease in pulmonary ventilation. He has been on no regular pulmonary regimen with his treatment having been intermittent. Moderate improvement would be expected on concentrated pulmonary regimen, following which I would expect his pulmonary function to be quiet adequate. (T–118)

On the physical capacities, evaluation, Dr. White indicated that plaintiff was capable of performing moderate work, that is, lifting 50 pounds or requiring walking, standing, pushing, and pulling. (T–125)

A further review of plaintiff's records was made by Dr. William F. Schmidt, a specialist in internal medicine, and on the basis of these records Dr. Schmidt concluded that plaintiff suffered from 1. chronic bronchitis 2. hypertension 3. chronic anxiety state 4. pneumoconiosis 5. possible prostatitis and 6. backache. Significant is the observation by Dr. Schmidt that plaintiff's frequent state of anxiety "will aggravate and exaggerate many of his illnesses. I feel that is one of his major impairments." (T–142) Dr. Schmidt concluded that plaintiff is capable of performing a light to moderate 8 hour day work. (T–146)

As suggested by Dr. Schmidt, plaintiff was last examined by a urinary specialist, a psychiatric social worker, a psychological examiner, and a psychiatrist.

The social worker concluded that he presented evidence of permanent and total disability to work. (T–149) The psychological examiner diagnosed (1) a chronic anxiety state and (2) agitated depression (T–151). The psychiatrist concluded "I do not see this man as being significantly psychiatrically impaired." (T–153)

After a thorough examination Dr. Noxon, a urologist, concluded "from the present findings no disability exists from the genito-urinary standpoint." (T–156)

The Social Security Act, 42 U.S.C. § 423(d)(1)(A) defines disability, in part as:

> "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Section 423(d)(2) goes on to provide:

> "(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 202(e) or (f)) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

It is apparent from the Act and the decisions of this Circuit that the applicant assumes the burden of proving that he meets the eligibility requirements under the Act. Vaughn v. Finch, 431 F.2d 997 (6th Cir. 1970); Goad v. Finch, 426 F.2d 1388 (6th Cir. 1970). It is firmly established, however, that once the claimant demonstrates that he is unable to perform his former occupation, the burden shifts to the Secretary to show that the claimant retains the residual capacity to engage in other substantial gainful work which exists in the national economy. In this instance Dr. Swann on February 3, 1972 stated "(t)his man is considered to be totally disabled as far as his usual occupation of underground coal mining is concerned." (T–132) Coupled with the fact that plaintiff left his coal mining job in 1971 because of his health, it is apparent that plaintiff established a prima facie case, thereby shifting the burden to the Secretary. Vaughn v. Finch, 431 F.2d 997 (6th Cir. 1970). "In such situation, it was the burden of the Secretary to establish what work could be performed by plaintiff in his lessened capabilities, and to demonstrate that such work was reasonably available." Goad v. Finch, 426 F.2d 1388, 1390–91 (6th Cir. 1970); Davidson v. Gardner, 370 F.2d 803 (6th Cir. 1966). Here, a qualified expert testified that in his opinion jobs suiting plaintiff's skills were available within a reasonable distance from his residence. Under the first hypothesis three types of jobs were available; under the second at least one type of job. Having examined the medical evidence contained in the record before the Examiner, there appears to be substantial evidence to support the Hearing Examiner's conclusion that plaintiff's pulmonary infliction due to pneumoconiosis is more accurately termed "moderate" rather than "severe" as was proposed by plaintiff's counsel. Thus, while plaintiff's pneumoconiosis may preclude his working in mining, it is apparent that it is not totally disabling. Additionally, there appears to be no persuasive medical evidence that plaintiff's back problem is disabling. (T–145) Finally, the Court notes that in the opinion of Dr. White (T–125) and Dr. Schmidt (T–141) plaintiff is capable of performing moderate work. Excepting the opinion of the psychiatric social worker (T–149), no reports or data from ten professionals indicate plaintiff is totally disabled.

The Court is bound by the findings of the Hearing Examiner if substantial evidence supports them and the Hearing Examiner has applied no erroneous standard of law in applying the evidence. Davis v. Gardner, 395 F.2d 681 (6th Cir. 1968)

Plaintiff urges the Court to reverse the Secretary's decision because of his erroneous application of the law in this case. Frith v. Celebreeze, 5 Cir., 333 F.2d 557 (1964). Specifically, plaintiff cites exhibits 14 (T–98) and 26 (T–131) of the record and contends that the results of a gas study administered to him at the time of his hospitalization for a six day period in 1972 compel the Secretary to make a finding of disability since the results are equivalent to the listing requirements found at 20 C.F.R. Subpart P, Appendix 3.04(c) (p. 331 1974 ed.) In support of his position, plaintiff cites Kraemer v. Richardson, Unempl.Ins.Rep. #16,989 (Civ.No.71–0–334, D.Neb.1972) and Howlett v. Richardson, Unempl.Ins.Rep. #17,182 (Civ.No.410–72–N, E.D.Va.1973). The Court, however, has examined the applicable regulatory provisions promulated by the Secretary and the accompanying listing of impairments (§ 3.00—Respiratory System) contained in the Code of Federal Regulations and finds no language that compels the Secretary to make a finding of total disability under the circumstances of this case simply because the gas studies conducted in 1972 met the values set forth in the appendix. Indeed, the Court does not read the regulations to create a rebuttable or conclusive presumption in plaintiff's favor. It is the Court's construction of the appendix's prefatory provision, 20 C.F.R. § 404.1502(a) (1974 ed.), that

the listing standards established by the Secretary merely serve as a suggestive guideline or point of reference; they are not mandatory or binding on the Secretary. Plaintiff's interpretation would in effect negate the need for a formal hearing and the receiving of expert medical and vocational opinion. The Act is not so ironclad or inflexible. Thus, assuming, arguendo, that valid and representative medical data is found to be equivalent to a particular listing, the Secretary must still proceed to determine whether such a listed disability precludes the claimants from engaging "in substantial gainful activity." This interpretation of the listing's function was subscribed to be the district court in Pucci v. Richardson, 369 F.Supp. 1344 (S.W. N.Y.1973), where Judge Weinfeld, presented with a factually similar setting, submitted:

> . . . The mere existence of a medically determinable impairment, whether or not it is one of those listed in the appendix, does not automatically carry the day for plaintiff so that he is thereby entitled to disability payments, (citing Cf. Celebrezze v. O'Brient, 323 F.2d 989, 992 (5th Cir. 1963); Gotshaw v. Ribicoff, 307 F.2d 840, 844 (4th Cir. 1962), cert. denied, Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963)). The regulations upon which plaintiff relies provide only that evidence of a listed impairment "can . . . justify" a finding of disability, (citing 20 C.F.B. § 404.1502 (a); § 404.1506(a) (1973)) not that such a finding is compelled. The additional element still must be found that the impairment results in "inability to engage in any substantial gainful

activity." . . . 369 F.Supp. at 1347.

The Court is persuaded that such reasoning fully complies with the doctrine that the Secretary's regulations established under the Social Security Act are intended as guidelines and not as conditions for recovery of disability benefits. Ultimately, the Act's language and policy and not the Secretary's regulations establish the permissible criteria for determining disability. 42 U.S.C. § 423(d) (1)(A), (2). Though valuable in the administration of a complex and pervasive program, they are not exclusive. *See generally* Wilson v. Richardson, 455 F.2d 304 (4th Cir. 1972); Leftwich v. Gardner, 377 F.2d 287, 290–91 (4th Cir. 1972) (". . . (h)earing examiners may not quit thinking when a claimant's earnings reach a magic-mark."); Underwood v. Gardner, 267 F.Supp. 802, 814 (W.D.Mo.1967); Pollard v. Gardner, 267 F.Supp. 890, 907 (W.D.Mo.1967).[1]

■■ Alternatively, plaintiff claims that Dr. Schmidt's statement that "(d)uring the pneumonia of 1972, shows severe impairment with hypoxia and slow convalescense" compelled the Hearing Examiner to find a period of disability in the past, specifically, from 6–'71 to 8–'73. There is substantial evidence to support the Hearing Examiner's decision that plaintiff never established a period of disability in the past as well as the present. A period of illness may temporarily disable an individual without being of sufficient duration to satisfy the time requirements of 42 U.S.C. § 423(d)(1) (B) (12 months).

> "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a

[1]. Even accepting plaintiff's theory that data equivalent to a listing is tantamount to a prima facie case, it is not entirely clear whether Table III under section 3.00 of the Respiratory System listing is the correct source of reference. Section 3.06 entitled "pneumoconiosis" states that where the pneumoconiosis is of a nodular or focal fibrosis (non-conglomerative) category evaluation is to be made under section 3.02. Section 3.02 uses the ventilatory function tests and not the gas study of section 3.04. Although not clearly delineated, Dr. Schmidt remarks that plaintiff's pneumoconiosis is the nodular fibrosis type. (T–142) Likewise, plaintiff's chronic bronchitis would be evaluated pursuant to section 3.02 (Ventilatory study) and not 3.04 (incorporating gas study).

conclusion." Miracle v. Celebrezze, 351 F.2d 361, 378 (6th Cir. 1965)

The Court is of the opinion that there is substantial evidence in the record to support the decision of the Hearing Examiner and that no erroneous legal standards were applied.

Accordingly, it is ordered that defendant's motion for summary judgment be granted and plaintiff's action be dismissed.